**STATE of Minnesota, Respondent,**

v.

**Antoine Delany WILLIAMS, Appellant.**

**No. A07–1502.**

Supreme Court of Minnesota.

Sept. 3, 2009.

Suzanne M. Senecal–Hill, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; Michael O. Freeman, Hennepin County Attorney, Donna J. Wolfson, Assistant Hennepin County Attorney, Minneapolis, MN, for respondent.

## O P I N I O N

DIETZEN, Justice.

In March 2007 appellant Antoine Delany Williams was convicted of first-degree assault, second-degree assault, and possession of a firearm by a felon. The district court imposed a 60–month sentence for the firearm conviction, which increased appellant's criminal-history score from three to four, and increased the presumptive sentence for the first-degree assault conviction by 14 months. The court then imposed the maximum presumptive sentence of 160 months for first-degree assault, to be served concurrently with the sentence for the firearm conviction. The court of appeals affirmed, and we granted review. Appellant argues that the district court erred (1) in ruling that the State could impeach him with his prior convictions; and (2) in using his felon-in-possession conviction to increase his criminal-history score before sentencing him on his assault conviction. We affirm.

On the afternoon of September 14, 2006, Minneapolis police responded to a 911 call of a shooting in South Minneapolis. The responding officer found Bennie Hodges lying on his stomach with blood on his pants near the buttocks area. Hodges told the officer that he had been shot and that appellant, whose nickname is "Little Cuz," was the shooter. Hodges was taken to the hospital for treatment of a gunshot wound. At the hospital, police spoke to Hodges' mother, who was with Hodges when he was shot. Hodges' mother told police that Hodges was shot by an African–American male roughly 25 years old with short braids to his neck, but was unable to make a positive identification from a photographic lineup.

The next day, Hodges identified appellant in a photographic lineup as the shooter. Subsequently, Hodges' mother independently identified appellant as the shooter in a separate photographic lineup. That same day, a next-door neighbor told police that she had seen the shooting and described the shooter as an African–American male roughly 25–30 years old, with braids, wearing a light-colored shirt and dark blue jeans, a description that matched appellant.

Appellant was charged with first-degree assault in violation of Minn.Stat. § 609.221, subd. 1 (2008); two counts of attempted first-degree aggravated robbery in violation of Minn.Stat. §§ 609.17, 609.245, subd.

1 (2008); second-degree assault in violation of Minn.Stat. § 609.222, subd. 1 (2008); and one count of felon in possession of a firearm in violation of Minn.Stat. § 624.713, subd. (2)(b) (2008).[1] A second amended complaint was filed that added a charge of attempted first-degree murder in violation of Minn.Stat. §§ 609.17, 609.185(a)(3) (2008).

At trial, the State presented the testimony of Hodges, Hodges' mother, and the next-door neighbor. Hodges testified that upon arriving at his home and approaching the back door that afternoon, he heard a noise, turned around, and a man told him to empty his pockets. At the same time Hodges' mother, who was at the back door, stepped between Hodges and the man and asked him not to shoot her son. Hodges turned and ran down the alley and heard a gunshot, then was hit by a bullet and fell to the ground. The next-door neighbor testified, consistent with her police report, that she had seen a 25- to 30-year-old African–American male with braids and facial hair shoot Hodges in the alley behind her duplex.

V.R., a friend of appellant, testified that appellant called her from a Subway restaurant in downtown Minneapolis that afternoon and that she picked him up and brought him back to her house to watch television. She did not remember the exact time of the call or when she picked him up.

The district court denied appellant's motion to suppress the photographic lineup identifications and granted the State's request to impeach appellant with two prior drug-related felonies if appellant testified

at trial. Appellant chose not to testify. After the trial, the district court declared a mistrial on the attempted first-degree murder charge because the jury could not reach a unanimous verdict. The jury found appellant guilty of the remaining charges.

At sentencing, the district court first sentenced appellant to 60 months for his felon-in-possession-of-a-firearm conviction, which increased appellant's criminal-history score from three to four and changed the presumptive sentence on the assault conviction from 104–146 months to 114–160 months. The district court then sentenced appellant to 160 months for first-degree assault, to be served concurrently with his 60-month sentence for illegally possessing a firearm.

The court of appeals affirmed. The court concluded, among other things, that (1) the district court did not abuse its discretion in permitting the State to impeach appellant with his prior convictions if he chose to testify; and (2) because appellant's felon-in-possession offense occurred first, that conviction could be sentenced first and included in appellant's criminal-history score to determine the presumptive sentence for his assault conviction. *State v. Williams*, 757 N.W.2d 504, 510–11 (Minn.App.2008). We affirm.

## I.

■ Appellant argues that the district court abused its discretion when it ruled that the State could impeach him with two prior drug-related felony convictions if he chose to testify.[2] Appellant contends that

1. Originally appellant was charged with attempted second-degree assault. An amended complaint removed the attempt element from the second-degree assault charge.

2. In his petition for review, appellant summarized three additional pro se issues decided by

the court of appeals. These issues are whether (1) appellant was denied a speedy trial; (2) the prosecutor committed misconduct; and (3) appellant's Sixth Amendment right to counsel was violated. We granted review on January 20, 2009. Our order granting review

these convictions bear little relevance to his truthfulness and that their probative value is outweighed by their potential prejudice.

■ We review a district court's decision to admit evidence of a defendant's prior convictions for an abuse of discretion. *State v. Ihnot,* 575 N.W.2d 581, 584 (Minn. 1998); *State v. Gassler,* 505 N.W.2d 62, 67 (Minn.1993). Evidence of a defendant's prior felony convictions may be admitted if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)(1).

■ Minnesota Rule of Evidence 609(a)(1) sets forth two requirements for the admissibility of prior convictions as impeachment evidence. First, the earlier crime must be punishable by more than one year of incarceration; second, the prejudicial effect of the prior conviction evidence must not outweigh its probative value. *Id.* In *State v. Jones,* 271 N.W.2d 534, 537–38 (Minn.1978), we set forth five factors to be considered in determining whether the probative value of impeachment evidence outweighs its prejudicial effect. Those factors are: (1) the impeachment value of the prior crime; (2) the date of the conviction and the defendant's subsequent history; (3) the similarity of the past crime with the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. *Id.* at 538. Appellant's prior convictions were punishable by more than one year of incarceration. Thus, the question here is whether the probative value of the evidence of those convictions outweighs its prejudicial effect. Appellant argues that it does not. Specifically, appellant argues

that the district court misapplied the *Jones* factors in considering the admissibility of his prior convictions and that these errors were harmful. We review his arguments in turn.

Appellant argues that the first factor, which considers the impeachment value of the prior crime, favors the exclusion of the evidence. In *State v. Brouillette,* 286 N.W.2d 702, 707 (Minn.1979), we observed that impeachment by prior crime aids the jury by permitting it to see the "whole person" of the testifying witness and therefore to better judge the truth of his testimony. Subsequently, in *State v. Gassler,* 505 N.W.2d at 67, we observed that the fact that "a prior conviction did not directly involve truth or falsity does not mean it has no impeachment value." Consequently, we affirmed the district court's application of the "whole person" test under *Brouillette. Gassler,* 505 N.W.2d at 67.

Here, the district court applied the "whole person" test and determined that the first *Jones* factor "slightly favored" admissibility of the prior convictions because the prior convictions would help the jury see appellant's "whole person." We conclude that the district court did not abuse its discretion when it made this determination.

■ Appellant contends that even if the "whole person" test favors admissibility here, its use should be reconsidered because district courts will admit prior conviction evidence merely because it may enlighten the jury about the defendant's past, without regard for any prejudice the evidence might create for the defendant. Essentially, appellant asks us to abrogate

did not limit the issues to be presented, and therefore the three pro se issues were incorporated by the order. But appellant did not brief or argue these three issues. Thus, ap-

pellant waived the issues, and we decline to reach them. *See State v. Hurd,* 763 N.W.2d 17, 32 (Minn.2009).

the "whole person" test and convert the first *Jones* factor into a balancing test between prejudicial impact and probative value. We decline the invitation for two reasons. First, appellant provides no persuasive reason to abrogate the "whole person" test. The underlying rationale of the "whole person" test is that it allows the jury to see the "whole person" of the testifying witness to better evaluate the truth or falsity of the testimony. We believe that the rationale for the test expressed in *Brouillette* is sound and see no reason to change the test. Second, Rule 609 requires that the court determine that "the probative value of [impeachment] evidence outweighs its prejudicial effect" before admitting such evidence. Thus, the rule already provides the necessary safeguards requested by appellant.

Appellant next argues that the second *Jones* factor weighed neither for nor against the admissibility of the State's impeachment evidence. The district court concluded that "the recency of the [prior convictions], as well as the recency of one [prior conviction] to the other favors admissibility of those two prior offenses." On this record, Williams' prior convictions showed a pattern of lawlessness and occurred less than two years prior to trial. *See State v. Ihnot*, 575 N.W.2d 581, 586 (Minn.1998) (concluding that two felony convictions within two years, together with another felony conviction from eight years prior constituted a "pattern of lawlessness" favoring admissibility under the second *Jones* factor). Thus, the court did not abuse its discretion in finding that this factor favored admissibility.

Appellant further argues that the third *Jones* factor weighed against admission because of the risk that the jury would associate his prior nonviolent drug-related convictions with the charged crimes and convict him based on "negative character evidence." The district court concluded that the prior convictions are "dissimilar to the crimes charged, which favors admissibility."

We have stated "if the prior conviction is similar to the charged crime, there is a heightened danger that the jury will use the evidence not only for impeachment purposes, but also substantively." *Gassler*, 505 N.W.2d at 67. Here, appellant's prior drug-related convictions were dissimilar to the instant offense in that they did not involve violence. Accordingly, we see no abuse of discretion with regard to the court's finding that this factor favored admissibility.

Appellant further argues that the fourth factor, which considers the importance of his testimony at trial, favors exclusion. He argues that admitting the prior convictions essentially precluded him from testifying at trial and thereby violated his due process right to explain his conduct to the jury.

In *Gassler*, we concluded that when the defendant's version of events was presented to the jury through the testimony of other witnesses, and no offer of proof was made as to any additional testimony the defendant would have added if he had taken the stand, the district court was within its discretion to conclude that the fourth factor favored admissibility. 505 N.W.2d at 67. Here, the district court concluded that appellant was able to present his theory of the case through another witness. Moreover, appellant made no offer of proof as to what testimony he would have added to the testimony of V.R. Thus, we conclude that the court did not abuse its discretion in finding that the fourth *Jones* factor weighed in favor of admissibility. Consequently, the district court did not violate appellant's due process rights. *See Gassler*, 505 N.W.2d at 67–68 (concluding that it is only when a

trial court has abused its discretion under Rule 609(a)(2) that a defendant's due process right to testify may be infringed by the threat of impeachment evidence).

Finally, appellant argues that his credibility was not a central issue at trial. The district court concluded that the fifth *Jones* factor favored admissibility, on the ground that the identity of the perpetrator was a central issue at trial in which appellant's testimony would have contradicted the other witnesses. The record supports the district court. Thus, we conclude that the district court did not abuse its discretion in finding that the fifth *Jones* factor favored admissibility.

We conclude that the district court did not abuse its discretion in determining that appellant's prior convictions were admissible for impeachment purposes.

## II.

Appellant also contends that the district court erred when it imposed a sentence for his felon-in-possession-of-a-firearm conviction and then included that conviction when calculating his criminal-history score for his first-degree assault sentence. According to appellant, the Minnesota Sentencing Guidelines, particularly the comments, must be interpreted by this court to prohibit the district court from including the felon-in-possession-of-a-firearm conviction in his criminal-history score because that offense arose out of the same behavioral incident as his assault conviction. The State counters that a felon-in-possession-of-a-firearm conviction is an exception to the single-behavioral-incident rule under Minn.Stat. § 609.035, subd. 1 (2008), and, therefore, the district court properly included that conviction in appellant's criminal-history score.

■ Initially, the parties dispute the standard of review that should be applied on this issue. Appellant argues that this issue requires interpretation of the sentencing guidelines and therefore the standard of review is de novo. The State argues that because the court is considering whether the district court properly calculated appellant's criminal-history score, the proper standard of review is abuse of discretion.

■ The crux of this sentencing dispute turns on the relationship between Minn. Stat. § 609.035 and the sentencing guidelines, particularly regarding the calculation of a defendant's criminal-history score. The interpretation of a statute and the sentencing guidelines are questions of law that we review de novo. *State v. Maurstad*, 733 N.W.2d 141, 148 (Minn.2007). Thus, we conclude that the standard of review on this issue is de novo. We turn to a review of the applicable statute and guidelines.

Minnesota Statutes § 609.035, subd. 1, prohibits the imposition of multiple sentences for offenses committed as part of a single behavioral incident. But the legislature has created a number of exceptions to the single-behavioral-incident rule. Those exceptions are: (1) felon-in-possession-of-a-firearm offenses; (2) fleeing a police officer; (3) criminal sexual conduct offenses; and (4) arson. Minn.Stat. § 609.035, subds. 3–6 (2008). As a result, if a defendant commits one of these offenses, he or she may be convicted and sentenced for other offenses that arise out of the same behavioral incident. *Id.* Similarly, the legislature has established several charging-statute exceptions that permit a district court to impose sentences for multiple offenses, even when the sentenced offenses arise out of a single behavioral incident. *See* Minn.Stat. §§ 152.137 (methamphetamine-related crimes involving children or vulnerable adults), 609.585 (burglary), 609.251 (kidnapping) (2008).

The Minnesota Sentencing Guidelines Commission (Commission) has promulgated sentencing guidelines to be used by a district court when imposing a sentence upon conviction of a crime in a particular case. *See* Minn.Stat. § 244.09 (2008) (empowering the Commission to promulgate sentencing guidelines). The guidelines set forth, among other things, the procedures by which the district court calculates a defendant's criminal-history score. *See* Minn. Sent. Guidelines II.B. The court then uses that criminal-history score to determine the defendant's presumptive sentence. *Id.*

A defendant's criminal-history score is calculated, in part, by allotting "points" for each of a defendant's prior convictions for which a felony sentence was imposed. Minn. Sent. Guidelines II.B.1. In order for a felony conviction to be included in a defendant's criminal-history score, the sentence for that conviction must have been "stayed or imposed before the current sentencing." *Id.* "The phrase 'before the current sentencing' means that in order for prior convictions to be used in computing criminal history score, the felony sentence for the prior offense must have been stayed or imposed before sentencing for the current offense." Minn. Sent. Guidelines cmt. II.B.105.

We first discussed whether a defendant's criminal-history score could be increased by an offense for which he or she was sentenced on the same day in *State v. Hernandez*, 311 N.W.2d 478 (Minn.1981). At the time, the guidelines allowed prior felony convictions to be used in calculating a defendant's criminal history score only if the sentence had been stayed or imposed

"before the date of sentencing for the current offense." [3] Minn. Sent. Guidelines cmt. II.B.101 (1980). The district court in *Hernandez* sentenced the defendant on the same day for three felony offenses, and it included the offenses for which it had already sentenced the defendant when it calculated his criminal-history score for the subsequent offenses. *Hernandez*, 311 N.W.2d at 480.

Based on the circumstances of the case, we concluded that the district court did not err in computing Hernandez's criminal-history score. *Id.* at 481. Those circumstances included:

(a) the fact that the three convictions were for separate and distinct offenses which were not part of a single behavioral incident or course of conduct and which did not involve the same victims, and (b) the fact that there is no indication that the trial court was trying to manipulate the Guidelines to achieve a substantive result not intended by the Guidelines. All the court was trying to do was avoid mere formalities and, in the interests of judicial economy, do in one day what the Guidelines allow to be done in three or more days.

*Id.*

■ Subsequently, we have referred to this method of calculating a defendant's criminal-history score as the *Hernandez* method. *See, e.g., State v. Soto*, 562 N.W.2d 299, 302–03 (Minn.1997). Under the *Hernandez* method, when a defendant is sentenced for multiple offenses on the same day, a conviction for which the defendant is first sentenced is added to his or her criminal-history score for another offense for which he or she is also sentenced.

---

**3.** This comment was amended in 1981 by eliminating the word "date." *See* Minn. Sent. Guidelines cmt. II.B.101 (1981). The amended comment stated that in order for prior convictions to be used in computing a crimi-

nal-history score, "the felony sentence for the prior offense must have been stayed or imposed before sentencing for the current offense." *Id.*

*See Soto,* 562 N.W.2d at 303 (explaining the *Hernandez* method).

■ The sentencing guidelines currently prohibit the use of the *Hernandez* method in some circumstances. They provide that

> when multiple current convictions arise from a single course of conduct and multiple sentences are imposed on the same day pursuant to Minn. Stat[ ]. §§ 152.137 [methamphetamine-related crimes involving children or vulnerable adults], 609.585 [burglary], or 609.251 [kidnapping], the conviction and sentence for the "earlier" offense should not increase the criminal history score for the "later" offense.

Minn. Sent. Guidelines II.B.1.c. Thus, the Commission has determined that when a defendant is sentenced for multiple convictions based on a single behavioral incident under Minn.Stat. §§ 152.137, 609.251, and 609.585, the district court is prohibited from using the *Hernandez* method to calculate the defendant's criminal-history score. The Commission explained:

> This was done to prevent inequities due to past variability in prosecutorial and sentencing practices with respect to these statutes, to prevent systematic manipulation of these statutes in the future, and to provide a uniform and equitable method of computing criminal history scores for all cases of multiple convictions arising from a single course of conduct, when single victims are involved.

Minn. Sent. Guidelines cmt. II.B.107.[4]

Essentially, appellant makes four arguments to this court. First, appellant argues that the district court erred in the order in which it sentenced his convictions. The district court sentenced appellant's

felon-in-possession conviction first and his first-degree assault conviction second. The court indicated that the felon-in-possession offense occurred first because appellant needed the firearm to commit the first-degree assault offense. The guidelines provide that "[m]ultiple offenses are sentenced in the order in which they occurred." Minn. Sent. Guidelines II.B.1. Accordingly, we conclude that the district court sentenced appellant's convictions in the correct order.

Second, appellant argues that the district court erred when it included his felon-in-possession-of-a-firearm conviction in his criminal-history score. According to appellant, the sentencing guidelines should be read to prohibit the district court from including his felon-in-possession-of-a-firearm conviction when calculating the criminal-history score used to determine his first-degree assault sentence because those offenses arose out of the same behavioral incident.

The district court imposed a 60–month sentence for appellant's felon-in-possession-of-a-firearm offense. It then employed the *Hernandez* method to compute appellant's criminal-history score and determine the presumptive sentence for his assault conviction. The court added one point for appellant's felon-in-possession conviction to his criminal-history score, which increased appellant's maximum presumptive sentence for his assault conviction by 14 months. *See* Minn. Sent. Guidelines II.B.1 and IV.

■ We have approved of the use of the *Hernandez* method when calculating a defendant's criminal-history score for offenses that arose from a single behavioral incident. *State v. Gartland,* 330 N.W.2d 881, 883 (Minn.1983) (affirming the use of

---

4. The comments to the sentencing guidelines are advisory and not binding on this court.

*Asfaha v. State,* 665 N.W.2d 523, 526 (Minn. 2003).

the *Hernandez* method to calculate a defendant's criminal-history score when he was sentenced for two counts of criminal negligence, based on the same car accident, under the multiple-victims exception to Minn.Stat. § 609.035). The sentencing guidelines are silent on whether courts can *Hernandize* convictions arising under the exceptions to the single-behavioral-incident rule provided in Minn.Stat. § 609.035, subds. 3–6. We apply the rules of statutory construction to the sentencing guidelines, including the canon "expressio unius est exclusio alterius." This canon provides that "the expression of one thing is the exclusion of another." *Nelson v. Productive Alternatives, Inc.,* 715 N.W.2d 452, 457 (Minn.2006).

Because the guidelines only prohibit application of the *Hernandez* method to multiple convictions and sentences that arise under Minn.Stat. §§ 152.137, 609.585, and 609.251, we conclude that the guidelines do not prohibit the application of the *Hernandez* method to multiple convictions and sentences that arise under Minn.Stat. § 609.035, subd. 3. The comments to the guidelines indicate that the Commission developed its prohibitions on the use of the *Hernandez* method "to deal with *several specific situations* which arise under Minnesota law." Minn. Sent. Guidelines cmt. II.B.107 (emphasis added). The phrase "several specific situations" indicates that the Commission intended to limit its *Hernandez* prohibitions to those exceptions expressly included in II.B.1.c. Therefore, we conclude that the district court did not err in applying the *Hernandez* method to appellant's sentences for felon-in-possession and assault.

Third, appellant argues that even if the guidelines do not prohibit application of *Hernandez* to the exceptions set forth in Minn.Stat. § 609.035, we should create such a prohibition because the Commis-

sion's deliberations on this issue show confusion. Appellant points to a 1996 Commission meeting at which the Commission considered including all the legislatively created exceptions to Minn.Stat. § 609.035 in its *Hernandez* prohibitions, but ultimately decided not to act until it had more information about the effect of such a decision. Appellant also points to a 2004 Commission meeting at which the Commission debated adding racketeering offenses to its list of *Hernandez* prohibitions but decided to wait for additional case law or legislation that might help it determine the proper course of action. Finally, appellant points to a 2005 Commission meeting at which the Commission amended the guidelines to include a *Hernandez* prohibition for methamphetamine-related crimes involving children or vulnerable adults, in response to the legislature's creation of the methamphetamine-crime exception to Minn.Stat. § 609.035.

The Commission's deliberations indicate that it has carefully considered the applicability of the *Hernandez* method to sentencing in several contexts over the last 13 years. During that time period, the Commission has extended the guidelines' prohibition on the use of the *Hernandez* method to methamphetamine-related crimes involving children and vulnerable adults. But the Commission has not amended the guidelines, or its comments, to create a similar prohibition encompassing the felon-in-possession exception in Minn.Stat. § 609.035. We conclude that the Commission's decision not to amend either the sentencing guidelines or the guidelines' comments was deliberate and reflects its intent to not extend the guidelines' *Hernandez* prohibitions when a defendant is sentenced for multiple offenses under the felon-in-possession exception to Minn.Stat. § 609.035.

Finally, appellant urges us to create a *Hernandez* prohibition for felon-in-possession offenses on the grounds that (1) the statutory language for the felon-in-possession exception is "quite similar" to the statutory language of the exceptions for which *Hernandizing* is prohibited; (2) the guidelines' rationale for the current *Hernandez* prohibitions—assuring a uniform and equitable method of computing criminal-history scores when single victims are involved—applies equally to the other section 609.035 exceptions; and (3) the district court's ability to impose multiple sentences for these exceptions allows the court to punish the defendant more harshly by means other than *Hernandizing.* Once again, we decline to step in where the Commission has decided not to act.

It is the proper function of the Commission to determine whether a *Hernandez* prohibition should be created for multiple sentences imposed pursuant to the felon-in-possession offenses exception under Minn.Stat. § 609.035, subd. 3.[5] *See State v. Zeimet,* 696 N.W.2d 791, 796 (Minn. 2005) (observing that, absent evidence of sentence manipulation, "it is up to the Minnesota Sentencing Guidelines Commission to determine how an offender's prior record will be used in assessing the number of criminal-history points"). The role of the judiciary is limited to the imposition of the particular sentence in a particular case. *See State v. Misquadace,* 644 N.W.2d 65, 68 (Minn.2002) ("The power to fix the limits of punishment for criminal acts lies with the legislature. However, the imposition of a sentence in a particular case within those limits is a judicial function.").

█ Under Minn.Stat. § 609.035, subd. 3 (2008), a defendant convicted of a felon-

in-possession-of-a-firearm offense may also be convicted and sentenced for any other offense committed as part of the same behavioral incident. When imposing sentences for multiple offenses in this situation, a district court may apply the *Hernandez* method and include the conviction for which the defendant is first sentenced when calculating the defendant's criminal-history score for another offense for which the defendant is also sentenced.

Affirmed.

**5.** Although appellant argues that *all* exceptions to section 609.035 should be subject to a *Hernandez* prohibition, only the ineligible-per-

son exception is properly before the court here, and thus the court's inquiry is limited to that exception.