**STATE of Minnesota, Respondent,**

v.

**Pierre Fernando WATSON, Appellant.**

**No. A12–0904.**

Court of Appeals of Minnesota.

April 15, 2013.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by WORKE, Presiding Judge; KALITOWSKI, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges his convictions of certain persons not to possess firearms and possession of a firearm on which the serial number or other identification has been obliterated, removed, changed, or altered, arguing that the prosecutor committed prejudicial misconduct and that the district court erred by sentencing appellant for both crimes when they were part of the same course of conduct. We affirm.

## FACTS

On the evening of May 30 and early-morning hours of May 31, 2011, appellant Pierre Watson attended a party at his sister's house. Also attending the party were two males whom Watson believed

had information about his friend's murder in June 2010. Watson approached the males, and the discussion "started getting loud," according to Watson's girlfriend, J.W. When J.W. could not persuade Watson to leave the party, she called Watson's mother and asked her to come to the party. Watson's mother came to the party, and Watson briefly got into her car, but he exited the car and returned to the party. J.W. then left the party with Watson's mother, who drove around the block and returned to the party. J.W. observed Watson and one of the males "fighting over a gun" and the other male aiming a second gun. Watson's mother called 911, provided a fictitious name, and reported that "a gang of boys" at the party had guns. Another party attendee also called 911 and reported the fight, and J.W. also called 911 and stated, "[T]hey got some guns! Please come!"

Shortly after J.W.'s 911 call, Minneapolis Police Officers Seth Porras and Kurt Schoonover arrived at the scene. Upon arrival, Officer Porras observed Watson on top of a male, who was on the ground and wearing a white shirt. Officer Porras observed Watson punching the male in the face and two females attempting to pull Watson off the male. Officer Porras instructed Watson to stop fighting and attempted to pull him off of the male. Watson pulled away from Officer Porras three times, and the officer put his arms around Watson's waist, felt a gun in his waistband, and yelled, "Gun." Officer Porras struggled with Watson, who retrieved the gun from his waistband and dropped it. Officer Porras then took possession of the gun.

J.W. testified that, when the police arrived, they tackled Watson as he was getting up off the ground and that, after the police had "the gun," "they rushed [Watson] and they started beating him." Wat-

son's mother testified that the male with whom Watson had the altercation "scooted" the gun under Watson and ran away from the scene. She also testified that the police "picked [Watson] up and as soon as they saw the gun, ... slammed him back on the ground." On cross-examination, Watson's mother admitted that Watson had his hands on the gun and was holding it. The gun was a handgun with bullets in the clip and one in the chamber. The serial number on the handgun had been removed.

Respondent State of Minnesota charged Watson under Minn.Stat. § 624.713, subd. 1(2), certain persons not to possess firearms, and under Minn.Stat. § 609.667(2), receiving or possessing a firearm on which the serial number or other identification has been obliterated, removed, changed, or altered. Watson stipulated that he was ineligible to possess a firearm and, based on a separate stipulation, the district court instructed the jury on the defense of necessity. During closing argument, the prosecutor argued that the necessity defense was not available to Watson if he created the emergency situation that led to his claimed necessity of grabbing the gun. Watson objected, and the district court overruled his objection. The jury returned verdicts of guilty on both charges.

This appeal follows.

## ISSUES

I. Did the prosecutor commit misconduct that deprived Watson of a fair trial?

II. Did the district court err by sentencing Watson for both the crime of certain person not to possess firearms under Minn.Stat. § 624.713, subd. 1(2), and the crime of possession of a firearm on which the serial number or other identification has been obliterated, removed, changed, or altered under Minn.Stat. § 609.667(2), be-

cause the crimes arose out of the same conduct?

## ANALYSIS

**I. The prosecutor did not commit prejudicial misconduct during closing argument by misstating the law on the necessity defense.**

■ Watson claims that the prosecutor committed prejudicial misconduct during closing argument when the prosecutor argued that Watson was disqualified from the necessity defense if he started the fight. Watson argues that the prosecutor misstated the law on the necessity defense. We utilize a harmless-error test when we review objected-to alleged prosecutorial misconduct. *State v. Carridine,* 812 N.W.2d 130, 146 (Minn.2012). Under this standard of review, we "determine whether the misconduct is harmless beyond a reasonable doubt." *State v. Dobbins,* 725 N.W.2d 492, 506 (Minn.2006) (quotations omitted). "[T]he application of [the test] varies based on the severity of the misconduct." *Carridine,* 812 N.W.2d at 146; *see State v. Caron,* 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974) (setting forth a two-tiered approach to analyzing objected-to alleged prosecutorial misconduct); *but see State v. McDaniel,* 777 N.W.2d 739, 749 (Minn.2010) (stating that "[w]e have not yet decided whether this two-tiered approach set forth in *Caron* remains viable" (quotation omitted)).

The Minnesota Supreme Court has concluded that a prosecutor erred during closing argument by misstating the law governing a defendant's defense. *State v. Strommen,* 648 N.W.2d 681, 689 (Minn. 2002). Watson claims that the prosecutor committed misconduct during closing argument by allegedly misstating the law when the prosecutor argued that Watson was disqualified from raising the necessity de-fense because he started the fight, as follows:

> [T]he defendant's own actions caused [the crime] to happen, and because it was his actions that were a part of what he wants you now to believe was an emergency situation, his defense of necessity must fail. It was the defendant who challenged the others to fight.
>
> . . . .
>
> And as far as an emergency situation, members of the jury, you can't create the emergency situation, break the law, and then hide behind a fiction he created to shelter himself for being accountable and to now claim that the law doesn't apply to him because he had no other choice. He had a choice. The defense of necessity fails in this case for that reason as well.
>
> . . . .
>
> [T]he defendant is trying to assert and trying to tell you that he has a defense, and the State submits that this defense is not meant for persons who create a dangerous situation and then become surprised that he's not entitled to act as he did.

■ We conclude that the prosecutor did not commit misconduct because the prosecutor's statements about the necessity defense are accurate statements of the law. The defense of necessity is available to a defendant in "emergency situations where the peril is instant, overwhelming, and leaves no alternative but the conduct in question." *State v. Johnson,* 289 Minn. 196, 199, 183 N.W.2d 541, 543 (1971) (citations omitted); *see also State v. Hage,* 595 N.W.2d 200, 207 (Minn.1999) (holding that the district court did not err by declining to overrule the jury's verdicts, when district court's "jury instruction required Hage to prove by a preponderance of the evidence that she acted in an emergency situation where the peril was instant, over-

whelming, and left her no alternative but to seek refuge in the driver's seat of her car"). The defense of necessity is "unavailable if the choice of action is *necessitated by recklessness or negligence.*" *Johnson,* 289 Minn. at 199, 183 N.W.2d at 543 (emphasis added).

■ Here, the prosecutor's statements accurately reflected the law that the necessity defense does not apply to a defendant who created the dangerous situation through his own negligence or fault. *See id.* at 201, 183 N.W.2d at 544 ("[N]ecessity or compulsion which will excuse a criminal act must be clear and conclusive and must arise *without negligence or fault on the part of the defendant.*" (emphasis added)). Because we conclude that the prosecutor did not err by misstating the law on the necessity defense and therefore did not engage in misconduct, we, like the *Carridine* court, "do not reach the issue of the continued applicability of the *Caron* test to objected-to prosecutorial misconduct." *Carridine,* 812 N.W.2d at 146.

**II.** The district court did not err by sentencing Watson for both the crime of certain person not to possess firearms under Minn.Stat. § 624.713, subd. 1(2), and the crime of possession of a firearm on which the serial number or other identification has been obliterated, removed, changed, or altered under Minn.Stat. § 609.667(2).

■ Citing Minn.Stat. § 609.035, subd. 1 (2010), Watson argues that because the offenses arose out of the same behavioral incident, the district court erred by sentencing him for both offenses. He argues that this court therefore must vacate his 19–month sentence for possession of a firearm on which the serial number or other identification has been obliterated, removed, changed, or altered under Minn. Stat. § 609.667(2). Watson acknowledges the exception to the prohibition against multiple sentences in section 609.035, subdivision 3, but argues that "[t]his [c]ourt has previously considered whether the subdivision 3 exception applies to a situation like this where the other offense is possession of a firearm with a removed or altered serial number," and, "[i]n three unpublished opinions, this [c]ourt has held that only one sentence is proper under these circumstances." Watson argues that the unpublished opinions "are squarely on point, and this [c]ourt should not deviate from the holding in these cases." That encompasses the entirety of Watson's argument. The state devotes only one sentence to this issue in its brief: "Respondent concedes that [Watson]'s lesser conviction and sentence in this case must be vacated." We decline to embrace Watson's suggestion that we should not deviate from this court's prior holdings in unpublished opinions,[1] nor do we accept the state's concession on this issue.[2]

1. *See* Minn.Stat. § 480A.08, subd. 3(c) (2010) ("Unpublished opinions of the [c]ourt of [a]ppeals are not precedential."); *Vlahos v. R & I Constr. of Bloomington, Inc.,* 676 N.W.2d 672, 676 & n. 3 (Minn.2004) ("[T]he district court relied on an unpublished opinion of the court of appeals.... This reliance was misplaced, both as a matter of law and as a matter of practice.... [W]e pause here to stress that unpublished opinions of the court of appeals are not precedential. The danger of miscitation is great because unpublished decisions rarely contain a full recitation of the facts.

Unpublished decisions should not be cited by the district courts as binding precedent." (citations omitted)); *see also Krummenacher v. City of Minnetonka,* 783 N.W.2d 721, 730 n. 12 (Minn.2010) (stating that the denial of a petition for review does not give a court of appeals decision more precedential value than a court of appeals decision from which no review was sought).

2. We need not accept a party's concession when the party makes a concession of a threshold issue that presents a question of law. *State v. Werner,* 725 N.W.2d 767, 770 n.

■ The crux of the issue in this case is whether section 609.035, subdivision 3, is properly interpreted to permit multiple sentences for the offenses of certain persons not to possess firearms in violation of Minn.Stat. § 624.713, subd. 1(2), and receiving or possessing a firearm in violation of Minn.Stat. § 609.667(2), notwithstanding the prohibition in subdivision 1 against imposition of multiple sentences for offenses committed as part of a single behavioral incident. This presents a case of first impression and a question of law subject to de novo review. *See State v. Hayes*, 826 N.W.2d 799, 803 (Minn.2013) (stating that a question of statutory interpretation is reviewed de novo); *State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012) ("Whether an offense is subject to multiple sentences under Minn.Stat. § 609.035 is a question of law, which we review de novo."); *State v. Williams*, 771 N.W.2d 514, 520 (Minn.2009) (applying de novo standard of review to interpretation of section 609.035 and the sentencing guidelines).

■ Our primary objective on review is to ascertain and give effect to the legislature's intent. *State v. Crawley*, 819 N.W.2d 94, 102 (Minn.2012) (citing Minn. Stat. § 645.16 (2010)). "[W]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* (quotation omitted). "Ambiguity exists only where statutory language is subject to more than one reasonable interpretation." *Id.* "If a statute is unambiguous, we interpret the text of the statute according to its plain language."

In re Welfare of J.B., 782 N.W.2d 535, 539 (Minn.2010). "[W]e give words and phrases their plain and ordinary meaning." *Hayes*, 826 N.W.2d at 803–04 (quotation omitted). If a statute is unambiguous, we must apply the statute's plain meaning. *Id.*

■ Minnesota Statutes section 609.035, subdivision 1, provides:

Except as provided in subdivisions 2, 3, 4, and 5, ... if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All the offenses, if prosecuted, shall be included in one prosecution which shall be stated in separate counts.

The purpose of Minnesota Statutes section 609.035 (2010), often referred to as the single-behavioral-incident rule, "is to protect against exaggerating the criminality of a person's conduct and to make both punishment and prosecution commensurate with culpability." *Ferguson*, 808 N.W.2d at 589 (quotation omitted). Section 609.035, subdivision 1, "prohibits the imposition of multiple sentences for offences committed as part of a single behavioral incident." *Williams*, 771 N.W.2d at 520. But, as noted by the *Williams* court,

the legislature has created a number of exceptions to the single-behavioral-incident rule. Those exceptions are: *(1) felon-in-possession-of-a-firearm offenses;* (2) fleeing a police officer; (3) criminal sexual conduct offenses; and (4) arson. Minn.Stat. § 609.035, subds. 3-6 (2008). As a result, *if a defendant*

---

1 (Minn.App.2007). Our obligation is to " 'decide cases in accordance with the law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities.' " *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 875 (Minn.2010) (quoting *State v. Hannuksela*, 452 N.W.2d 668, 673 n. 7 (Minn.1990) (quotation omitted)).

*commits one of these offenses, he or she may be convicted and sentenced for other offenses that arise out of the same behavioral incident.*

*Id.* (emphasis added); *see Ferguson,* 808 N.W.2d at 589 ("[T]he legislature did not intend section 609.035 to immunize offenders in every case from the consequences of separate crimes intentionally committed in a single episode against more than one individual." (quotation omitted)).

▐▐▐▐▐ Minnesota Statutes section 609.035, subdivision 3, the felon-in-possession-of-a-firearm exception, provides: "Notwithstanding section 609.04,[3] a prosecution for or a conviction of a violation of section 609.165 or 624.713, subdivision 1, clause (2), is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct." (Footnote added.) Watson argues that section 609.035, subdivision 3, does not permit separate sentencing for the offenses of felon in possession of a firearm and receiving or possessing a firearm, the serial number or other identification of which has been obliterated, removed, changed, or altered. We conclude that section 609.035, subdivision 3, is unambiguous in stating that neither the single-behavioral-incident rule nor section 609.04 is "a bar to conviction of or punishment for *any* other crime committed by the defendant as part of the same conduct." (Emphasis added.)

▐▐▐ "The word 'any' is given broad application in statutes, regardless of whether we consider the result reasonable." *Hyatt v. Anoka Police Dep't,* 691 N.W.2d 824, 826, 828 (Minn.2005) (inter-

preting "any person" in context of Minn. Stat. § 347.22 (2004) to include municipal owners of police dogs); *see also In re PERA Police & Fire Plan Line of Duty Disability Benefits of Brittain,* 724 N.W.2d 512, 519 (Minn.2006) (interpreting "any act of duty" in Minn.Stat. § 353.656 (2004) to unambiguously be "inclusive, not restrictive"); *In re Hildebrandt,* 701 N.W.2d 293, 299–300 (Minn.App.2005) (noting that, when used affirmatively, "any" means " 'every' or 'all' " (quotation omitted)). Nothing in section 609.035, subdivision 3, implies that "any" has a contrary meaning or does not include the offense of receiving or possessing a firearm, the serial number or other identification of which has been obliterated, removed, changed, or altered in violation of Minn.Stat. § 609.667(2). The unambiguous language of section 609.035, subdivision 3, permits Watson to be sentenced for both the offenses of felon in possession of a firearm and receiving or possessing a firearm, the serial number or other identification of which has been obliterated, removed, changed, or altered, notwithstanding that they arose out of the same conduct—Watson's possession of a firearm. The district court did not err by imposing sentences for both offenses.

## DECISION

The prosecutor did not misstate the law on the necessity defense during closing argument and therefore did not err. Under Minn.Stat. § 609.035, subd. 3, a district court may sentence a defendant for the offenses of certain persons not to possess firearms in violation of Minn.Stat. § 624.713, subd. 1(2), i.e., felon in posses-

---

**3.** Minnesota Statutes section 609.04, subdivision 1 (2010), governs convictions of lesser offenses and is not applicable in this case, despite the state's reference to Watson's "lesser conviction." The district court found Watson guilty of certain persons not to possess

firearms in violation of Minn.Stat. § 624.713, subd. 1(2), and receiving or possessing a firearm in violation of Minn.Stat. § 609.667(2), both felony offenses and neither a lesser offense of the other under the criteria set forth in section 609.04, subdivision 1.

sion of a firearm, and receiving or possessing a firearm, the serial number or other identification of which has been obliterated, removed, changed, or altered in violation of Minn.Stat. § 609.667(2), notwithstanding that both offenses were committed as part of the same conduct.

**Affirmed.**