*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0256**

State of Minnesota,
Respondent,

vs.

David Arthur LaRose,
Appellant.

**Filed January 20, 2015
Affirmed
Schellhas, Judge**

Cass County District Court
File No. 11-CR-13-792

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Christopher J. Strandlie, Cass County Attorney, Walker, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

       Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

       Appellant argues that the evidence is insufficient to support his convictions of

first-degree burglary, kidnapping, false imprisonment, and third-degree arson and that the

district court abused its discretion by permitting his impeachment with prior felony convictions. We affirm.

**D E C I S I O N**

Three men broke a glass door and barged into 87-year-old B.W.'s Federal Dam home in the early-morning hours of October 28, 2011. The intruders threatened B.W. with a long gun, moved her around her home, and tied her up. They also stole personal property and loaded it into a van, which had been stolen from a parking lot in Cass Lake and contained the owner's hunting rifle and homemade pipe. After the intruders left, B.W. discovered that the van was on fire.

Respondent State of Minnesota charged LaRose with three counts of first-degree burglary, in violation of Minn. Stat. § 609.582, subd. l(a) (occupied dwelling), (b) (dangerous weapon), (c) (assault) (2010); kidnapping (felony or flight), in violation of Minn. Stat. § 609.25, subd. 1(2) (2010); two counts of theft, in violation of Minn. Stat. § 609.52, subd. 2(1) (movable property), (17) (motor vehicle) (2010); false imprisonment (intentional restraint), in violation of Minn. Stat. § 609.255, subd. 2 (2010); and third-degree arson (less than $1,000), in violation of Minn. Stat. § 609.563, subd. l(a) (2010). On each count, the state charged LaRose with liability for crimes of another under Minn. Stat. § 609.05 (2010). The jury found LaRose guilty on all eight counts, and the district court imposed sentence. This appeal follows.

*Sufficiency of the evidence*

Under the traditional standard of review of sufficiency of the evidence, appellate courts "review the evidence to determine whether, given the facts in the record and the

2

legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks*, 842 N.W.2d 297, 306–07 (Minn. 2014) (quotation omitted). In conducting this "painstaking analysis of the record," appellate courts view the evidence "in the light most favorable to the conviction" and "assume the jury believed the State's witnesses and disbelieved any evidence to the contrary." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). A jury's verdict will not be disturbed on appeal "if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Id.*

But "[i]f a conviction, or a single element of a criminal offense, is based solely on circumstantial evidence," *Fairbanks*, 842 N.W.2d at 307, appellate courts

> apply a two-step analysis in determining whether [that] circumstantial evidence is sufficient to support a guilty verdict.[1] The first step is to identify the circumstances proved. The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.
> In identifying the circumstances proved, [appellate courts] assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict. Put differently, [appellate courts] construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the

---

[1] Circumstantial evidence consists of "evidence based on inference and not on personal knowledge or observation and [of] all evidence that is not given by eyewitness testimony." *Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (quotations omitted). Direct evidence, on the other hand, is "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Id.* (quotation omitted).

> defense witnesses. . . . Under the second step of [the] analysis, [appellate courts] examine independently the reasonableness of the inferences that might be drawn from the circumstances proved.

*State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014) (quotations and citations omitted). The two-step standard of sufficiency review involves "heightened scrutiny" as compared with the traditional standard of sufficiency review. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). Nevertheless, "[a] jury is in the best position to evaluate circumstantial evidence, and its verdict is entitled to due deference." *Fairbanks*, 842 N.W.2d at 307.

In a case in which the state offered both direct and circumstantial evidence on a disputed element of the offense of conviction, appellate courts may apply the traditional standard to review the sufficiency of the direct evidence, standing alone, to prove the element; only if the direct evidence is insufficient to prove the disputed element must appellate courts apply the two-step standard to review the sufficiency of the evidence to prove the element. *See State v. Silvernail*, 831 N.W.2d 594, 605 (Minn. 2013) (Stras, J., concurring in part) (reasoning that "there is no reason to evaluate the reasonableness of inferences that the jury is *never* required to make" and concluding that "the 'circumstantial evidence standard' does not apply to our review of an element of a criminal offense that the State has proven by direct evidence"); *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013) (stating that "[w]hether we apply the standard of review applicable to circumstantial evidence depends on whether the conviction necessarily depends on circumstantial evidence" and concluding that "[b]ecause the state's direct evidence is insufficient by itself to prove [defendant]'s intent . . . , we must

consider the state's circumstantial evidence, which requires that we engage in the type of heightened scrutiny that is appropriate for circumstantial evidence").

In this case, the state presented both direct and circumstantial evidence that LaRose participated in or intentionally aided the commission of first-degree burglary, kidnapping, false imprisonment, and third-degree arson (home-invasion offenses).[2] K.H. testified that, during the time in question, R.C. woke K.H. and asked her to pick up Gordon Dunn, one of the burglary participants. K.H. and R.C. drove to Federal Dam and found Dunn standing on the side of the road near a green house. At Dunn's request, K.H. stopped her car and opened the trunk, and Dunn "threw some stuff" into the trunk but did not get into the car. Soon K.H. saw LaRose near the house, and LaRose jumped into K.H.'s car and appeared scared. K.H. looked around, saw a door window broken, figured out what was going on, and also got scared. She asked LaRose what the guys were doing and learned that the house was being burglarized.

G.V. testified that, while he was asleep at Dunn's home during the time in question, Dunn called and asked him for a ride. G.V. refused Dunn's request. G.V. testified that, "probably months after that," LaRose told him that he and Dunn robbed a

---

[2] We group together the home-invasion offenses because "[a] person [who] is criminally liable for a crime committed by another . . . [by] intentionally aid[ing] . . . the other to commit the crime . . . is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." Minn. Stat. § 609.05, subds. 1, 2. LaRose does not challenge the sufficiency of the evidence to prove that first-degree burglary, kidnapping, false imprisonment, and third-degree arson were reasonably foreseeable by LaRose as probable consequences of the home invasion; instead, he challenges the sufficiency of the evidence to prove that he participated in or intentionally aided the commission of any of the home-invasion offenses (participation/aid element).

5

house. According to LaRose, they ". . . loaded a van up. And it didn't start or something and it was out of gas, so they tried to start a fire—or did start a fire." When LaRose relayed the events, he acted "[l]ike it wasn't nothing." At trial, LaRose testified that he did not remember what he did or where he spent the night on October 27–28, 2011, that he had "never hung out with" Dunn or Staples, that he had not seen K.H. "in years, probably five years or more," and that he never had conversed with G.V. about the home invasion.

Police collected physical evidence, took several witness statements, and found charred remains of a homemade pipe in the burned van. DNA analysis of blood swabbed from a dresser in B.W.'s home showed a single-source male DNA profile that matched a known sample from Dunn, which would not be expected to occur more than once among unrelated individuals in the general population. DNA analysis of blood swabbed from the outside handle of a door on B.W.'s home showed a single-source male DNA profile that matched a known sample from David Staples, another burglary participant, which would not be expected to occur more than once among unrelated individuals in the general population. DNA analysis of genetic material swabbed from a vodka bottle found outside of B.W.'s home showed a mixture of DNA from three or more individuals. While LaRose, Staples, and Dunn cannot be excluded as contributors to the mixture, 82.7% of the general population can be excluded as contributors.

G.V.'s testimony about LaRose's confession to burglary, theft, and arson is direct evidence of the participation/aid element, which is thereby subject to the traditional standard of review. *See Silvernail*, 831 N.W.2d at 605 & n.2 (Stras, J., concurring in part)

(reasoning that "[o]nce the jury accepted [witness]'s testimony [that defendant admitted to killing victim], the jury did not need to make any factual inferences in order to conclude that [defendant] caused [victim]'s death" and concluding that "direct evidence establishes the existence of the disputed element . . . that [defendant] caused [victim]'s death"). But to constitute sufficient evidence to prove the participation/aid element, G.V.'s testimony regarding LaRose's confession must be corroborated. *See* Minn. Stat. § 634.03 (2010) ("A confession of the defendant shall not be sufficient to warrant conviction without evidence that the offense charged has been committed . . . ."); *State v. Heiges*, 806 N.W.2d 1, 11 (Minn. 2011) (concluding that the term "'confession' in section 634.03 is broad enough to cover *all* acknowledgments of guilt made after a crime is committed, whether the acknowledgement is made to a friend, acquaintance, or to the police").

Aside from G.V.'s testimony regarding LaRose's confession, the state presented only circumstantial evidence of the participation/aid element. Because the direct evidence, standing alone, is insufficient to prove the participation/aid element, we apply the two-step standard of review. *See Silvernail*, 831 N.W.2d at 605 (Stras, J., concurring in part); *Porte*, 832 N.W.2d at 309.

In this case, construing conflicting evidence in the light most favorable to the convictions, *see Moore*, 846 N.W.2d at 88, the circumstances proved are:

> (1) Surveillance video depicts three people stealing B.R.'s van from a Cass Lake parking lot shortly after midnight on October 28, 2011. The van contained a rifle and home-made pipe;

(2) Immediately after the van was stolen, surveillance video depicts the stolen van stopping briefly behind the nearby home of Y.S.;

(3) About the time that the stolen van stopped behind Y.S.'s home, LaRose, Staples, and Dunn made a brief visit to Y.S.'s home;

(4) In the early-morning hours of October 28, 2011, three people entered B.W.'s home in Federal Dam without B.W.'s consent;

(5) During the home invasion, the intruders broke a glass door on B.W.'s home; threatened B.W. with a long gun, moved B.W. around her home, tied up B.W., stole B.W.'s personal property and loaded it into the stolen van, which was parked near B.W.'s home;

(6) After the home invasion, B.W. discovered that the van was parked near her home and that its tire was aflame; B.W. believed that the van had been set on fire and soon it was engulfed in flames;

(7) Dunn's blood was found on a dresser in B.W.'s home, and Staples's blood was found on the outside handle of a door on B.W.'s home;

(8) A mixture of DNA was left on a vodka bottle found outside B.W.'s home; LaRose, Staples, and Dunn cannot be excluded as contributors to the mixture, but 82.7% of the general population can be excluded as contributors;

(9) In the early-morning hours of October 28, 2011, K.H. drove her car, with R.C. as a passenger, to pick up Dunn and saw Dunn near a house in Federal Dam;

(10) K.H. stopped her car near the house, and Dunn "threw some stuff" into the trunk;

(11) K.H. saw LaRose near the house, and LaRose jumped into K.H.'s car and appeared to be scared. K.H. saw a broken door window and learned that the house was being burglarized;

(12) K.H. drove her car to Dunn's home, "brought the keys in," and left;

(13) On October 28, 2011, Dunn, Staples, LaRose, R.C., and G.V. were at Dunn's home, although Dunn, Staples, and LaRose had not been at Dunn's home on the evening of October 27;

8

(14) LaRose told G.V. that he and others had burglarized a house, loaded up a van, and attempted to burn the van when it did not start.

The circumstances proved permit a reasonable inference that LaRose participated in or intentionally aided the commission of the home-invasion offenses, and therefore the circumstances proved are consistent with LaRose's guilt. *See id*. Furthermore, we are satisfied that the circumstances proved—when considered as a totality that includes LaRose's confession to G.V.—are inconsistent with any rational hypothesis except that of guilt, since the circumstances proved permit no reasonable inference other than LaRose's participation in or intentional aid of the commission of the home-invasion offenses. *See id.*; *cf. State v. Sterling*, 834 N.W.2d 162, 175 (Minn. 2013) (stating that appellate courts "review the circumstantial evidence not as isolated facts, but as a whole"). The evidence therefore is sufficient to support LaRose's convictions of first-degree burglary, kidnapping, false imprisonment, and third-degree arson. LaRose argues in the alternative that the state failed to adduce sufficient evidence to prove that the fire was started intentionally. Because the circumstances proved permit a reasonable inference that one or more of the three people who invaded B.W.'s home started the fire intentionally and permit no other reasonable inference, LaRose's alternative argument fails. *See Moore*, 846 N.W.2d at 88.

*Rule 609 impeachment*

LaRose conceded before the district court, and concedes on appeal, that his prior misdemeanor conviction of giving a peace officer a false name was admissible for impeachment purposes. But LaRose argued at trial and argues on appeal that neither his

9

own prior felony convictions nor those of the state's witnesses were admissible for impeachment purposes under *State v. Jones*, 271 N.W.2d 534 (Minn. 1978). The district court orally ruled on LaRose's motion as follows:

> The impeachment, it seems to me that we're all in or nobody is in. And based on my reading of the rule in 609 in the application of the *Jones* factors for those crimes for which I am aware of at this point, it seems to me that the best way to go on there is that everything comes in on both sides of the table.

Defense counsel thereafter elicited LaRose's testimony regarding his 2011 conviction of fifth-degree possession of a controlled substance, his 2008 conviction of escape from custody, and his 2007 conviction of third-degree assault. K.H. testified regarding her 2007 conviction "of a controlled substance crime," and G.V. testified regarding his 1988 conviction of burglary.

Appellate courts "review a district court's decision to admit evidence of a defendant's prior convictions for an abuse of discretion." *State v. Williams*, 771 N.W.2d 514, 518 (Minn. 2009). Any witness—including a defendant who wishes to testify in his own defense, *State v. Zornes*, 831 N.W.2d 609, 626–27 (Minn. 2013)—may be impeached by evidence that he was convicted of a felony if (1) no more than ten years has elapsed since the date of conviction or since the witness was released from the confinement imposed for that conviction, and (2) the district court determines that the probative value of admitting the evidence of conviction outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1), (b).

"[I]n *Jones*, [the supreme court] laid out five factors relevant to determining if a prior conviction is more probative than prejudicial . . . ." *Zornes*, 831 N.W.2d at 627. "[I]t is error for a district court to fail to make a record of its consideration of the *Jones* factors, though the error is harmless if it is nonetheless clear that it was not an abuse of discretion to admit evidence of the convictions." *State v. Davis*, 735 N.W.2d 674, 680 (Minn. 2007). Even if a district court's "consideration of the *Jones* factors" is "obvious," the court's "fail[ure] to make a record of the *Jones* factor analysis" is error. *State v. Swanson*, 707 N.W.2d 645, 655 (Minn. 2006).

Here, the district court did not make a record of its analysis of the *Jones* factors. This was error. *See id.* We therefore apply the *Jones* factors to this case to determine whether the court abused its discretion in ruling that LaRose's prior felony convictions were admissible for impeachment purposes. *See id.*

The first *Jones* factor is the impeachment value of the prior crime. *Zornes*, 831 N.W.2d at 627. "[The supreme court] ha[s] held that '*any* felony conviction is probative of a witness's credibility' because it allows the fact-finder to see the whole person and his 'general lack of respect for the law.'" *Id.* (quoting *State v. Hill*, 801 N.W.2d 646, 651–52 (Minn. 2011)). Because LaRose's prior convictions are felonies, this factor weighs in favor of admission. *See id.*

The second *Jones* factor is the date of conviction and the defendant's subsequent history. *Id.* While "[the supreme court] ha[s] recognized that a history of lawfulness since a conviction can limit a conviction's probative value," it has also stated that "if a witness is convicted again or sent back to prison, then the witness's history of lawlessness

11

enhances an otherwise stale conviction's probative value." *Id.* (quotations omitted). Although LaRose's 2007 conviction of third-degree assault was more than six years old at the time of trial, the probative value of the 2007 conviction is enhanced by the 2008 escape-from-custody conviction. *See id.* Similarly, LaRose's 2011 conviction of fifth-degree possession of a controlled substance shows continued lawlessness and enhances the probative value of the 2007 and 2008 convictions. *See id.* This factor therefore weighs in favor of admission. *See Swanson*, 707 N.W.2d at 655.

The third *Jones* factor is the similarity of the past crime with the charged crime. *Zornes*, 831 N.W.2d at 627. "[The supreme court] ha[s] held that if a prior conviction is similar to the crime a defendant is charged with, then the prejudicial effect of admitting the prior conviction increases." *Id.* This factor weighs in favor of admission of LaRose's prior convictions of controlled-substance and escape crimes because those past crimes are not similar to any of the charged crimes. *See id.* at 627–28. Conversely, third-degree assault bears some similarity to the charged crime of first-degree burglary (assault), since assault is an element of the charged crime. *See* Minn. Stat. § 609.582, subd. 1(c). This factor weighs against admission of LaRose's prior assault conviction. *See Zornes*, 831 N.W.2d at 627–28. But we note that "Minnesota courts have been liberal in admitting prior convictions for impeachment even when the prior crime is *the same* as the crime charged." *State v. Stanifer*, 382 N.W.2d 213, 218 (Minn. App. 1986) (emphasis added).

The fourth *Jones* factor is the importance of the defendant's testimony, and the fifth *Jones* factor is the centrality of the credibility issue. *Zornes*, 831 N.W.2d at 627. "If credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor

12

of admission of the prior convictions." *Swanson*, 707 N.W.2d at 655. Here, LaRose testified that he had not seen K.H. "in years, probably five years or more," and that he had never conversed with G.V. about the home invasion. LaRose's testimony directly contradicted K.H.'s testimony that she gave him a ride during the early-morning hours of October 28, 2011, and G.V.'s testimony that he heard LaRose confess to burglary, theft, and arson. These factors weigh in favor of admission, especially in light of the district court's decision to allow the impeachment of K.H. and G.V. by their prior felony convictions. *See id.* at 655–56.

Because only one of the *Jones* factors weighs against admission of LaRose's assault conviction, and none of the *Jones* factors weighs against admission of his escape and controlled-substance convictions, the district court did not abuse its discretion in ruling that LaRose's prior felony convictions were admissible for impeachment purposes. *See id.*

**Affirmed.**