**STATE of Minnesota, Respondent,**

v.

**Tommy SALYERS, III, Appellant.**

No. A13–0597.

Court of Appeals of Minnesota.

Jan. 21, 2014.

Review Granted March 26, 2014.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Jeffrey S. Naglosky, Koochiching County Attorney, International Falls, MN, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; BJORKMAN, Judge; and MINGE, Judge.*

**OPINION**

ROSS, Judge.

Koochiching County sheriff's deputies executing a search warrant easily pried open a gun cabinet in Tommy Salyers's bedroom and found three firearms, includ-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

ing a sawed-off shotgun with its serial number scratched off. A jury convicted Salyers of being a felon in possession of a firearm, possessing a sawed-off shotgun, and possessing a firearm with an obliterated serial number. Because the shotgun was located in Salyers's bedroom—an area where he had exclusive control—and the weak container in which the gun was located left it readily accessible, we affirm the conviction over Salyers's argument that he did not possess the gun. But because the district court sentenced Salyers on three counts that arose from the same conduct, we reverse his sentence in part and remand for resentencing.

**FACTS**

Sheriff's Deputy John Kalstad got a tip from a reliable informant in September 2012 that Tommy Salyers, III, possessed stolen hardware and tools in his International Falls home. Deputy Kalstad sought, obtained, and executed a search warrant. Deputies arrived at Salyers's house to find a "No Trespassing" sign posted on the garage, signed by Salyers and S.B. The garage and the house were locked. No one was inside. Deputies entered the house and began searching.

While the deputies searched for the stolen items listed in the warrant, they found a tall, rectangular gun cabinet in Salyers's bedroom. The cabinet was constructed of thin metal, like a file cabinet, and it was locked. Police found a key in the bedroom that fit the lock, but it would not turn. So Deputy Bruce Grotberg got a crowbar from his car and he and Deputy George Gray used it to easily pry open the cabinet.

The deputies found none of the stolen goods inside, but among other things they found a sawed-off shotgun, a youth single-

Minn. Const. art. VI, § 10.

shot shotgun, a pistol, bullets, a wooden box marked "Tom and [S.B.]," and a life-insurance statement for a policy that covered a person named T.K. They found more bullets in a coffee mug near the safe. Those bullets did not fit any gun in the safe. Deputies noticed that the sawed-off shotgun's serial number had been scratched off. They confiscated the guns and left. They never tested any of the items for fingerprints or DNA.

Deputy Grotberg went to Carlton County to interview S.B. in Cloquet. S.B. told the deputy that she had previously shared the International Falls house with Salyers but that she had moved from there to Cloquet a few days before the search. She claimed that she owned the gun cabinet and that the youth shotgun inside belonged to her son.

The state charged Salyers with being a felon in possession of a firearm, possession of a firearm with an obliterated serial number, and possession of a short-barreled shotgun. Salyers moved the district court to suppress evidence obtained during the search, arguing that the search exceeded the scope of the warrant. He argued alternatively that the district court should dismiss the gun charges for lack of probable cause because no evidence proved that the guns belonged to him. The district court found that the deputies lawfully searched the gun cabinet and that the circumstances established probable cause to believe that Salyers possessed the guns.

The state called three witnesses in Salyers's trial. Deputy Kalstad testified that Salyers lived in the home and had no other residence. Deputy Gray testified to what he observed during the search. And Deputy Grotberg testified to what he saw during the search and to what he learned when he interviewed S.B. The jury heard substantially the same facts as summarized above, but with no reference to any stolen items. Salyers moved for a directed verdict after the state rested its case. The district court denied the motion, and Salyers presented no evidence.

During the state's closing argument, the prosecutor asserted that the issue was exclusively "gun possession." To illustrate his point that Salyers constructively possessed the guns, the prosecutor told the jury, "I am standing in a courtroom right now in front of you. Do I not possess the things that are locked up in my home, locked up in the bedroom of my home? I would submit I do." Salyers did not object. The jury convicted Salyers on all three counts.

Salyers argued at sentencing that the three offenses of his conviction stemmed from the same occurrence and that he therefore could be sentenced on only one. The district court sentenced him to serve 60 months in prison on the felon-in-possession charge and invited the parties to brief the multiple-sentencing issue, but neither party did. The district court then sentenced Salyers to 15 months in prison for possessing a firearm without a serial number and 19 months for possessing a short-barreled shotgun, both of these prison terms to be served concurrently with the felon-in-possession sentence.

Salyers appeals his conviction and sentence.

## ISSUES

I. Did the district court err when it held that the search of the gun cabinet was reasonable and within the scope of the search warrant?

II. Did the jury receive sufficient evidence to find beyond a reasonable doubt that Salyers possessed the guns inside the safe?

III. Was the state required to demonstrate that the serial number obli-

terated on the short-barreled shotgun was required by federal law?

IV. Did the district court commit plain error by allowing the prosecutor to argue that Salyers had constructive possession of articles locked in his home in his locked bedroom?

V. Did the court err by sentencing Salyers on each of the three offenses of conviction?

## ANALYSIS

Salyers appeals his conviction and sentence on five grounds. He asserts that the district court erred by denying his suppression motion, that the evidence was not sufficient to prove that he possessed the guns, that the state failed to prove all elements of the sawed-off shotgun charge, that prosecutorial misconduct requires a new trial, and that his sentence is excessive because it fails to recognize that the three crimes all arose from the same behavioral incident. Only his last argument warrants reversal in part.

## I

■ Salyers contends that the district court erred by denying his motion to suppress evidence. We review conclusions of law de novo when a defendant challenges a district court's order denying his motion to suppress. *State v. Gauster,* 752 N.W.2d 496, 502 (Minn.2008). Salyers contends that the district court erred by holding that the search was constitutionally reasonable. Specifically, Salyers argues that because *all* of the items listed in the search warrant could not have been located in the gun cabinet, the deputies exceeded the scope of their search by opening it. He also argues that damaging personal property was unwarranted. Neither argument moves us to reverse.

■ Both the United States and Minnesota Constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. We consider the totality of the circumstances to determine whether police acted reasonably during the search. *Dalia v. United States,* 441 U.S. 238, 258, 99 S.Ct. 1682, 1694, 60 L.Ed.2d 177 (1979); *State v. Thisius,* 281 N.W.2d 645, 645–46 (Minn.1978). Police may search any container within the warranted area "if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." *State v. Wills,* 524 N.W.2d 507, 509 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995). And they may force open a locked box that "might contain one of the items described in the warrant." *Thisius,* 281 N.W.2d at 645. The items on the warrant included handheld power tools that could have fit inside the gun cabinet. This renders the search of the cabinet appropriate. That *every* item listed in the warrant could not fit inside does not prevent police from searching it for some items. That the deputies bent the lock to open it is constitutionally insignificant. The deputies' cabinet search was reasonable in light of the objective. The district court did not err by denying Salyers's motion to suppress.

## II

■ Salyers argues that the state did not provide the jury with sufficient evidence to find beyond a reasonable doubt that he possessed the contents found inside the gun cabinet. When a party challenges the sufficiency of the evidence, we review the record "to determine whether the evidence, when viewed in the light most favorable to the conviction," allows a jury to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Ortega,* 813 N.W.2d 86, 100 (Minn.2012) (quotation omitted). When a case depends on circumstantial evidence, we must apply

a "heightened scrutiny" standard of review. *State v. Al–Naseer,* 788 N.W.2d 469, 473 (Minn.2010). Under this standard, the evidence must "be consistent with the hypothesis that the accused is guilty and inconsistent with any other rational hypothesis except that of guilt." *Id.* (quotation omitted). Salyers contends that his convictions were based on circumstantial evidence calling for our heightened scrutiny of the conviction.

 We first determine whether this case requires heightened scrutiny. It does not. Salyers's conviction requires that he knowingly possessed the sawed-off shotgun. *See* Minn.Stat. §§ 609.165, subd. 1b (persons prohibited from possessing guns), 609.67, subd. 2 (banning sawed-off shotguns), 609.667(2) (obliterated serial numbers) (2012); *see also State v. Ndikum,* 815 N.W.2d 816, 818–19, 822 (Minn.2012) (reading a *mens rea* requirement into statutes prohibiting possession of handguns). The state can prove possession either under a theory of actual possession or constructive possession. *See State v. Loyd,* 321 N.W.2d 901, 902 (Minn.1982). We will focus on whether the evidence proves constructive possession. To prove constructive possession, the state had the burden to prove one of two things: either that

> (1) the police found [the contraband] in a place under the defendant's exclusive control to which other people did not normally have access; or (2) if the police found it in a place to which others had access, that there is a strong probability, inferable from the evidence, that the defendant was, at the time, consciously exercising dominion and control over it.

*State v. Porter,* 674 N.W.2d 424, 429 (Minn.App.2004) (citing *State v. Florine,* 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975)). We agree with the state's contention that it proved constructive possession

of the gun by direct evidence, and so the heightened circumstantial-evidence standard of review does not apply.

 The record indicates without dispute—and Salyers acknowledged through counsel at oral argument on appeal—that Salyers had exclusive control of the bedroom. But he argues that the evidence does not establish that he had access to or exclusive control over the contents of the cabinet found within his bedroom. We are not persuaded. Direct evidence proved that Salyers alone resided in the home, that the gun cabinet was in his bedroom, and that no one except him had access to the home or the bedroom or its contents at the time of the search. This puts the cabinet in Salyers's exclusive, at least constructive, possession.

This is enough to establish that Salyers also possessed the contents found in the cabinet given the evidence that persuaded the jury. That someone other than Salyers claimed to own the cabinet, and that the key that the police found in the house could not apparently open the cabinet, do not alter our view. The evidence demonstrates that the cabinet was not an impregnable, high-security gun safe. It was made of metal so thin that the deputies had no difficulty opening it with a simple pry tool. So whether or not someone else owned the cabinet, and whether or not Salyers had a functional key to it, the jury knew that Salyers had exclusive control over the bedroom and the cabinet and therefore ongoing access to the gun inside the cabinet. As a practical matter, the shotgun could almost just as well have been inside a vinyl case and leaning against the bedroom wall; Salyers could handle, load, and fire the gun immediately by easily breaching the insubstantial security feature of the container—a container that he alone possessed.

■ We hold that a person possesses the readily accessible firearms inside a container under that person's control. Although this issue is one of first impression in Minnesota, other jurisdictions have applied their similar statutes the same way, sometimes explicitly and sometimes assumedly. *See e.g., State v. Crie*, 154 N.H. 403, 406–07, 913 A.2d 767, 772 (2006) (explicitly rejecting argument that the New Hampshire defendant "did not have possession because the key to [a gun] locker was in his wife's jewelry box" because "[t]his ... did not prevent the defendant from gaining access to the weapons as the jewelry box and gun locker were both in the home the defendant shared with his wife"); *State v. Long*, 8 Neb.App. 353, 594 N.W.2d 310, 313 (1999) (affirming conviction of Nebraska man who was separated from his wife and who had moved out of his family home even though the evidence showed that "the [guns] ... were locked in a gun cabinet and that only [defendant's estranged wife] had a key to the cabinet"); *and cf. Armstrong v. Commonwealth*, 263 Va. 573, 576, 562 S.E.2d 139, 140–41 (2002) (affirming conviction under Virginia's felon-in-possession statute when "officers each observed a semi-automatic .22 caliber rifle inside a gun cabinet" that "was locked and [that] Armstrong did not have the key to"). Salyers possessed the readily accessible guns inside the bedroom gun cabinet that he constructively possessed.

■ Salyers also argues that he did not know that the cabinet contained the shotgun. He is correct that the statute includes a *mens rea* element. *See Ndikum*, 815 N.W.2d at 822. But *mens rea*, including knowledge, is generally inferred from the circumstances. *See Al–Naseer*, 788 N.W.2d at 474. And here, the jury had ample ground to infer that Salyers knew that the cabinet contained guns, including the shotgun. The metal cabinet appears to be a gun cabinet (and an NRA sticker affixed to the door corroborates the appearance); it was in Salyers's bedroom; S.B., who previously shared the house with Salyers, knew the cabinet contained guns; and the cabinet contained other items clearly belonging to Salyers and S.B., like the box marked with both their names. The jury believed that Salyers knew the cabinet contained the shotgun, and although a different inference is possible, none is reasonable. We hold that the jury had sufficient evidence on which to find that Salyers knowingly possessed the shotgun.

Our analysis in *State v. Garcia–Gutierrez*, 830 N.W.2d 919 (Minn.App.2013), *review granted* (Minn. Aug. 6, 2013), does not suggest a different holding. In *Garcia–Gutierrez*, a group of men committed a burglary in which they stole a safe that contained a handgun. 830 N.W.2d at 921. The state charged the men with first-degree burglary, theorizing that by possessing the stolen safe with the handgun inside the men committed the burglary while possessing a dangerous weapon. *Id.* The district court dismissed the charge because the defendants had no knowledge of or access to the contents of the safe, so that no probable cause existed. *Id.* We affirmed. *Id.* at 925. That decision has no bearing here. In *Garcia–Gutierrez*, we observed that no evidence demonstrated that the defendants were aware of the contents of the "box-shaped" safe and "nothing about the safe ... suggested that it contained a gun." *Id.* The defendants had to "repeatedly smash[ ]" it "to the ground" before they could know the contents. *Id.* at 921. But here, the cabinet was located in Salyers's bedroom, not in another person's residence. The cabinet here also apparently contained guns; it was marked with an NRA sticker and was tall and narrow. And its contents were readily accessible; deputies opened it easi-

ly with a prybar. *Garcia–Gutierrez* has no bearing on our holding.

### III

██ Salyers asserts that we should overturn his conviction for possessing a firearm with an obliterated serial number because the state failed to prove an essential element of the crime. A person may not "possess a firearm, the serial number or other identification of which has been obliterated." Minn.Stat. § 609.667(2). For purposes of the statute, " 'serial number or other identification' means the serial number and other information required under United States Code, title 26, section 5842, for the identification of firearms." *Id.* Salyers contends that this definition of "serial number" implies an element that the state had to prove beyond a reasonable doubt, which is that the serial number was required by federal law.

Saylers's argument has merit only on the surface. He is correct that every element of a crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). But the legislature has not included the element he proposes. The statute prohibits possessing a firearm from which the "serial number" required by section 5842 has been removed, and there is no need for case-by-case proof of a gun-specific serial-number requirement because section 5842 requires *all* firearms to have a serial number. *See* 26 U.S.C. § 5842 (2012). So the legislature intended the firearm-without-a-serial-number statute to encompass all firearms. We decline to read any new element into the statute.

### IV

██ Salyers contends that prosecutorial misconduct requires a new trial. Because Salyers did not object to the alleged misconduct, "he forfeits the right to have the issue considered on appeal" unless we find the error sufficient to exercise our discretion to review an unobjected-to error. *State v. Powers*, 654 N.W.2d 667, 678 (Minn.2003). We review unobjected-to alleged misconduct only for plain error. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006). On appeal, Salyers has the burden to show the statement was error and that the error was plain. *Id.*

The prosecutor's closing argument included the following statement: "Do I not possess the things that are locked up in my home, locked up in the bedroom of my home? I would submit I do." Salyers did not object, but now he maintains that the comment mischaracterized the law. Misleading the jury about the law constitutes prosecutorial misconduct. *See State v. Strommen*, 648 N.W.2d 681, 689–90 (Minn. 2002). The prosecutor's statement here constitutes a fair argument, urging the jury to apply the law to the circumstances proved about Salyers's home. A person possesses those things that are located in an area under his exclusive control to which others normally do not have access. *See Florine*, 303 Minn. at 104–05, 226 N.W.2d at 611. And things that are locked up in the bedroom of one's exclusively possessed home are, arguably, things that are located in an area under one's exclusive control to which others normally do not have access. The statement was not misconduct because it was not erroneous.

### V

██ Salyers also challenges his sentence. We may "correct a sentence not authorized by law." Minn. R.Crim. P. 27.03, subd. 9. Salyers argues that the district court erred by imposing multiple sentences for convictions that arise from the same incident. We examine the record to determine whether the evidence sup-

ports the legal conclusion that the multiple convictions stemmed from separate behavioral incidents. *State v. Nordby*, 448 N.W.2d 878, 880 (Minn.App.1989). We will not disturb the district court's decision unless it rests on clearly erroneous findings. *Effinger v. State*, 380 N.W.2d 483, 489 (Minn.1986).

Salyers contends that his conviction for all three offenses, being a felon in possession of a firearm, possessing a sawed-off shotgun, and possessing a firearm with an obliterated serial number, stems from the same conduct—possessing the shotgun. If multiple convictions arise from the same behavioral conduct, a defendant generally can be punished for only one crime. Minn. Stat. § 609.035, subd. 1 (2012). But a person convicted of being an ineligible person possessing a firearm can also be convicted of a separate offense that arose "as part of the same conduct." *Id.*, subd. 3 (citing Minn.Stat. § 609.165). We recently held that a felon can be sentenced for possessing a firearm as well as for possessing a weapon with an obliterated serial number. *State v. Watson*, 829 N.W.2d 626, 633 (Minn.App.2013), *review denied* (Minn. June 26, 2013). Applying *Watson*, we hold that the district court did not err by sentencing Salyers for possessing a firearm and for possessing a weapon with an obliterated serial number.

■■■ But even applying *Watson*, section 609.035, subdivision 1, allows for only one of the remaining two convictions—possessing a firearm with an obliterated serial number and possessing a short-barreled shotgun—to form the basis of a separate sentence. We agree with Salyers that these two crimes arose from the same behavioral incident.

To determine whether two crimes occurred during the same behavioral incident, we conduct a case-specific inquiry to consider "the singleness of purpose of the defendant and the unity of time and of place of the behavior." *State v. Bookwalter*, 541 N.W.2d 290, 294 (Minn.1995) (quotation omitted). The state concedes that both crimes occurred at the same time and place, but it argues that they constitute different incidents because the "single criminal objective" of each crime differs from that of the other. It asserts that a person possesses a short-barreled shotgun to conceal the weapon, while a person obliterates a serial number to prevent others from tracing it. This may be so in some circumstances, but the district court is asked to focus on "the singleness of purpose *of the defendant,*" *id.* (emphasis added), not the singleness of purpose of a hypothetical offender. The state offered no evidence that Salyers's purpose was to have an untraceable, concealable weapon. It did not, for example, prove that Salyers obliterated the serial number or that he structurally modified the shotgun. It proved only that he possessed a gun that, as far as the evidence goes, just happens to have reflected both illegal characteristics at once. Given "the singleness of purpose of the defendant and the unity of time and of place of the behavior" and the lack of any contrary evidence, we hold that the district court erred by sentencing Salyers on both crimes. While section 609.035, subdivision 3, allowed Salyers to be sentenced to one other crime in addition to the felon in possession offense, no statutory exception avoids section 609.035, subdivision 1's general prohibition against multiple sentences for the same conduct for both other offenses.

## DECISION

The deputies reasonably executed the search warrant, and the district court correctly denied Salyers's motion to suppress evidence. Sufficient evidence supports the jury's finding that Salyers possessed the

firearms and Salyers's legal challenges are not persuasive. We therefore affirm the conviction. But because Salyers cannot be lawfully sentenced for all three offenses, we reverse in part and remand for resentencing.

**Affirmed in part, reversed in part, and remanded.**