*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1134**

State of Minnesota,
Respondent,

vs.

Michael Douglas Metsala,
Appellant.

**Filed January 9, 2017
Affirmed
Peterson, Judge**

Hennepin County District Court
File No. 27-CR-10-53915

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Larkin, Judge; and Reyes,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

        In this appeal from convictions of two counts of being an ineligible person in

possession of a firearm, appellant argues that (1) the district court erred when it denied his

suppression motion because police lacked probable cause to search the filing-cabinet drawers where a firearm was found, and (2) his convictions must be reversed because trial counsel was ineffective when she failed to challenge the constitutionality of his arrest and the admissibility of his postarrest statements to police. We affirm.

## FACTS

When E.E. arrived at work at a car dealership in Burnsville on a Monday, he discovered that the business had been burglarized during the weekend. There were pry marks on a garage door, consistent with a forced entry into the building, and four toolboxes were missing. The toolboxes were floor models on wheels; they each weighed up to 2,000 pounds, and they contained power tools and hand tools. One of the toolboxes and the tools in it belonged to the car dealership, and the other three toolboxes and the tools in them belonged to employees. The total estimated value of the toolboxes and tools was between $60,000 and $100,000.

E.E. suspected that J.H., who had a long history of theft and burglary offenses, had stolen the toolboxes and tools. E.E. knew that J.H. "hung out" at a construction business owned by appellant Michael Douglas Metsala, so E.E. went to Metsala's business and entered through an open service door. Neither the owner nor J.H. was present. E.E. saw a door with a mail slot in it. He opened the mail slot, looked through it, and saw the missing toolboxes in a storage room. He then called 911.

In response to E.E.'s call, Bloomington police officers were dispatched to Metsala's business. Sergeant Williams spoke to E.E., who stated that he saw the car dealership's property in a storage area. Metsala arrived at the business and started walking toward the

2

storage area. Williams told him that he could not enter the storage area because officers were freezing the room while they waited for a search warrant to go inside. Metsala repeatedly tried to go around Williams, who was blocking the entry to the storage area, so Williams arrested Metsala for obstructing legal process.

Police obtained a warrant to search Metsala's business. The warrant authorized the police to search for the toolboxes and tools; documents related to any of the victims; tools "capable of prying or forcing doors"; and documents "showing possession, occupancy, or control of the premises to be searched." While executing the search warrant, police found a .380-caliber semiautomatic handgun.

After being given a *Miranda* warning, Metsala made a statement to police, during which he admitted that he possessed the .380-caliber handgun recovered from his business. He also admitted that he possessed a .44-caliber handgun that was at his Bloomington residence. Police obtained a warrant to search Metsala's residence and found the .44-caliber handgun. Metsala had a prior conviction in federal court for a crime of violence.

Metsala was charged with two felony counts of being a prohibited person in possession of a firearm. He moved to suppress the handguns and his statements to police, arguing that (1) E.E. was acting as a government agent when he looked into the storage area and saw the toolboxes, (2) the search warrant did not describe with particularity the area to be searched and included areas for which there was no probable cause to search, (3) the search warrant did not contain sufficiently particular descriptions of the documents and forced-entry tools, and (4) his statements to police were illegally obtained. The district court denied the motion.

Metsala waived his right to a jury trial, and the case was tried to the court. E.E. testified at trial, and the parties stipulated to the remaining evidence. The district court found Metsala guilty as charged. This court reversed and remanded for a new trial because Metsala did not waive his right to testify, his right to compel the testimony of favorable defense witnesses, and his right to cross-examine the state's witnesses. *State v. Metsala*, No. A13-2199, 2014 WL 3700958, at *1 (Minn. App. July 28, 2014).

On remand, Metsala again waived his right to a jury trial, and the case was tried to the court. The parties stipulated to Metsala's prior federal conviction, the two guns, Metsala's statement to police, the transcript of the hearing on Metsala's suppression motion, and E.E.'s testimony at the first trial. Four police officers and two other witnesses testified. The district court found Metsala guilty as charged and sentenced him to two concurrent terms of 60 months in prison.

Metsala filed a notice of appeal and a motion to stay the appeal in order to pursue postconviction relief. After this court granted the motion, Metsala filed a postconviction petition in district court, claiming that he received ineffective assistance of trial counsel because his attorney failed to challenge the lawfulness of his arrest and the admissibility of his postarrest statements to police. The district court summarily denied relief based on its determination that Metsala's arrest was legal and, therefore, he did not receive ineffective assistance. This court then reinstated the appeal.

4

## D E C I S I O N

## I.

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn. 1999) (citing *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn. 1992)). We review the district court's findings of fact for clear error and determine de novo whether a search was justified by probable cause. *State v. Jenkins,* 782 N.W.2d 211, 223 (Minn. 2010).

> Probable cause should be determined under a "totality of the circumstances" test: The task of the [district court] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the court], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley,* 336 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). "[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause." *State v. Jones*, 678 N.W.2d 1, 11 (Minn. 2004).

Metsala argues that police lacked probable cause to search the filing-cabinet drawer at his business where the firearm was found. The state argues that Metsala waived this issue by failing to raise it before the district court. "A reviewing court may generally consider only those issues that the record shows were presented [to] and considered by the [district] court in deciding the matter before it." *State v. Bailey*, 312 N.W.2d 612, 623

(Minn. 2007) (quotation omitted). In the memorandum supporting his suppression motion, Metsala argued that the warrant did not describe with particularity the area to be searched and included areas for which there was no probable cause to search and that the descriptions of the documents and forced-entry tools in the search warrant were not sufficiently particular because they did not limit the search to items associated with criminal activity. Although the probable-cause argument that Metsala makes on appeal is more precise than the argument he made in the district court, the broad argument he made in the district court was sufficient to preserve the issue for appellate review.

Metsala objects to the clauses in the search warrant authorizing the police to seize the following items: "Documents, photos, papers, or receipts identifying any of the three victim employees or [the car] dealership. . . . Documents showing possession, occupancy or control of the premises to be searched." Metsala argues:

> Allowing police to search filing cabinet drawers inside [Metsala's] business was unconstitutional because the State did not establish a nexus between documents identifying victims and tools used to burglarize the [car dealership] and [Metsala's] business or that documents showing possession, occupancy, or control of [Metsala's] business would assist in the apprehension or conviction of the burglary suspect.

But the search warrant also authorized the police to search Metsala's business for tools that had been in the stolen toolboxes.

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

6

*United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 2170-71 (1982); *see also*

*State v. Salyers*, 842 N.W.2d 28, 33 (Minn. App. 2014) ("The items on the warrant included

hand-held power tools that could have fit inside the gun cabinet. This renders the search

of the cabinet appropriate."), *aff'd* 858 N.W.2d 156 (Minn. 2015). Because tools that had

been in the toolboxes were items that might be found in filing-cabinet drawers, the officers

had authority to search the filing-cabinet drawers.

## II.

When we review a postconviction court's summary denial of relief, the court's

factual findings will not be disturbed unless they are clearly erroneous, but we review the

court's legal conclusions de novo. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013).

> Ultimately, we review a denial of a petition for postconviction
> relief, including a denial of relief without an evidentiary
> hearing, for an abuse of discretion. A postconviction court
> abuses its discretion when its decision is based on an erroneous
> view of the law or is against logic and the facts in the record.
> Because claims of ineffective assistance of counsel are mixed
> questions of law and fact, we review the postconviction court's
> legal conclusions on such questions de novo. Therefore, when
> we review a postconviction court's denial of relief on a claim
> of ineffective assistance of counsel, we will consider the
> court's factual findings that are supported in the record,
> conduct a de novo review of the legal implication of those facts
> on the ineffective assistance claim, and either affirm the court's
> decision or conclude that the court abused its discretion
> because postconviction relief is warranted.

*Id*. at 503-04 (quotation, citations, and footnote omitted).

To prevail on an ineffective-assistance claim, a defendant must prove (1) "that

counsel's representation fell below an objective standard of reasonableness" and (2) that

7

"there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Taylor,* 869 N.W.2d 1, 21 (Minn. 2015) (quotation omitted) (citing *Strickland v. Washington,* 466 U.S. 668, 687-96, 104 S. Ct. 2052, 2064-69 (1984)).

Metsala argues that his trial counsel was ineffective because she failed to challenge the lawfulness of his arrest and the admissibility of his postarrest statements to police. A person who intentionally "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties" is guilty of a crime. Minn. Stat. § 609.50, subd. 1(2) (2008). Obstruction occurs when a defendant's act has "the effect of physically obstructing or interfering with an officer conducting an investigation." *State v. Tomlin*, 622 N.W.2d 546, 548 (Minn. 2001).

"The test of probable cause to arrest is whether the objective facts are such that under the circumstances a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *State v. Johnson*, 314 N.W.2d 229, 230 (Minn. 1982) (quotation omitted). "Probable cause . . . requires something more than mere suspicion but something less than the evidence necessary for conviction." *State v. Prax*, 686 N.W.2d 45, 48 (Minn. App. 2004), *review denied* (Minn. Dec. 14, 2004). On given facts, whether probable cause to arrest exists is a question of law, which we review de novo, but we review the district court's underlying factual findings for clear error. *State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998).

When Metsala arrived at his business, Williams told him that the officers were freezing the storage room while they waited for a search warrant. Williams testified about the encounter between him and Metsala as follows:

> Q: Describe your interaction with Mr. Metsala.
> A: Well, I was standing at the doorway of the back room where the tools were, and Mr. Metsala had entered a doorway to that common room, the main entrance, I believe, for the business. At that point he was about eight yards away from me. He appeared to me to be agitated.
> The person that had called 911 immediately said, "I'm sorry, Mike. I don't mean to jam you up, but I figured my stuff was here."
> And Mr. Metsala then made a comment to the effect of "I just want to know what the hell is going on here." He never made eye contact with me. He . . . immediately started walking towards the storage room where I was standing by the door. It appeared that he was going to enter the room. I put my arm out to tell him he couldn't enter it. He again appeared to be agitated, said that "I own the place" or something to that effect, and he tried to walk around me again.
> Q: So is that twice.
> A: At that point twice, yes.
> . . . And I side-stepped to get in front of him and told him he couldn't enter and asked him "What don't you understand that you can't go in there?" And at that point I asked him for some ID.
> Q: Did he give you his ID?
> A: He did.
> Q: After giving you his ID, what steps – what did Mr. Metsala do?
> A: He again tried to walk past me, appeared to be trying to enter that room. And I stepped to the side again to block his path, and at that point we made contact.
> Q: What part of your bodies made contact?
> A: My chest area. I don't remember what part of him.
> Q: Was it a violent contact?
> A: No.
> Q: Was this the third time he tried to gain entry to the room?
> A: Yes.

At that point, Williams decided to arrest Metsala for obstructing legal process.

The district court concluded that probable cause to arrest existed for the following reasons:

> First, Sgt. Williams was securing the storage room while waiting for a search warrant to authorize a search. Thus, the officer was engaged in the performance of official duties.
>
> Second, [Metsala] repeatedly tried to enter the storage room even after the officer told [Metsala] not to do so because police were securing the area for a search warrant. At one point, [Metsala] physically made contact with Sgt. Williams' chest. The officer was objectively reasonable in concluding that [Metsala] was interfering with the officer's efforts to secure the scene prior to execution of a warrant.
>
> Third, the officer had probable cause to believe that [Metsala] was acting with intent to obstruct, resist, or interfere with the officer. [Metsala] appeared agitated, he was demanding to know what was going on, and he kept trying to enter the area. He persisted in his efforts to enter the area even after the officer told him multiple times that he could not go into the area. [Metsala's] actions, statements, and demeanor gave the officer a reasonable basis to conclude that [Metsala] intended to interfere with the officer's efforts to secure the storage area. *See State v. Charlton*, 358 N.W.2d 26, 30 (Minn. 1983) ("intent may be inferred by the nature of the acts, what the defendant did, what the defendant said, and how the defendant acted").

We agree with the district court's reasoning and conclusion.

Even if obstruction of legal process is a specific-intent crime, the fact-finder may presume that the defendant intended the natural and probable consequence of his actions. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997). The natural and probable consequence of Metsala's actions was that Metsala would physically interfere with or

10

obstruct Williams's effort to freeze the storage room as part of the officers' investigation. Therefore, a person of ordinary care and prudence would entertain an honest and strong suspicion that Metsala had committed a crime, and Williams had probable cause to arrest Metsala.

Because Metsala's arrest was supported by probable cause, counsel did not provide ineffective assistance by failing to challenge the legality of the arrest. *See State v. Dickerson*, 777 N.W.2d 529, 535 (Minn. App. 2010) ("An attorney's failure to raise meritless claims does not constitute deficient performance and cannot provide the basis for a claim of ineffective assistance."), *review denied* (Minn. Mar. 30, 2010). Because Metsala's claim that counsel provided ineffective assistance by failing to challenge the admissibility of his postarrest statements is premised on his arrest being illegal, that claim also fails.

**Affirmed.**