CONNOLLY, Judge
Appellant was charged with possession of a firearm by a person convicted of a crime of violence ( Minn. Stat. § 624.713, subds. 1(2), 2(b) (2014) ), possession of a short-barrel shotgun ( Minn. Stat. § 609.67, subd. 2 (2014) ), second-degree controlled-substance crime-possession of a mixture of a total weight of 25 grams containing methamphetamine ( Minn. Stat. § 152.022, subd. 2(a)(1) (2014) ), possession of chemical reagents or precursors to the manufacture of methamphetamine ( Minn. Stat. § 152.0262, subd. 1(b) (2014) ), and fifth-degree controlled-substance crime-possession of a mixture containing a controlled substance ( Minn. Stat. §§ 152.025, subd. 2(b)(1), 609.11, subd. 5 (2014) ). A jury found him guilty on all five counts, and he was sentenced on all five. He challenges his conviction for possession of chemical reagents or precursors to the manufacture of methamphetamine on the ground that the district court erred by not instructing the jury as to which items in appellant's possession were chemical reagents or precursors under Minn. Stat. § 152.0262, subd. 1(b), and by admitting into evidence an unauthenticated copy of appellant's Facebook page; he challenges his multiple sentences on the ground that all five offenses were part of the same incident; and, in his pro se supplemental brief, he challenges the district court's jurisdiction and alleges a violation of his Fourth-Amendment rights. We affirm in part, reverse in part, and remand.
FACTS
About 3:30 a.m. on January 28, 2016, appellant Russell Winbush awakened an acquaintance, D.J., by pounding on D.J.'s door, shouting that someone owed appellant $150, and pushing his way into D.J.'s residence. D.J. pushed appellant out and locked the door.
About 10:30 that morning, D.J. and appellant met on the street. D.J. told appellant not to wake him in the middle of the night and to stay away from D.J.'s house. Appellant opened his coat and showed D.J. a firearm in his waistband; D.J. observed black tape wrapped around the firearm. Appellant told D.J. that he "would shoot anyone that stood in his way" and that he "meant business."
D.J. was aware that appellant was prohibited from possessing a firearm and reported appellant's possession of a firearm to a sheriff's deputy. The deputy, knowing appellant lived with his mother about two blocks from the location of his encounter with D.J., went to her house with another officer. When they knocked, appellant opened the door, but slammed it shut after he was informed that he was under arrest. The officers forced the door open and entered the house, where they saw appellant *682 lying face down in the living room and his mother sitting in a chair.
A search of appellant revealed a glass pipe with burnt white residue, later determined to be methamphetamine, in his shirt pocket. Appellant's mother permitted a search of the house, which produced a loaded, sawed-off shotgun partially wrapped with black tape; a note stating, "150 owed 1 p.m.," and a backpack containing a bottle with white sludge that was later determined to the basis of a mixture of a total weight of 25 grams or more containing methamphetamine, a bottle of Draino, batteries, a funnel, and a recipe listing the ingredients and giving directions for making methamphetamine. The officers evacuated the residence, suspecting it was a clandestine methamphetamine lab and therefore dangerous.
ISSUES
I. Did the omission of a jury instruction on whether the items found in appellant's possession were listed in Minn. Stat. § 152.0262, subd. 1(b), constitute plain error?
II. Did the district court abuse its discretion by admitting into evidence a copy of appellant's Facebook page, offered to establish his residence in his mother's house?
III. Did the district court err in imposing multiple sentences?
IV. Do appellant's pro se arguments entitle him to a new trial?
ANALYSIS
I. Omission of a Jury Instruction
No objection was made to the jury instructions. Therefore, to receive a new trial on the basis of erroneous jury instructions, appellant must demonstrate that there was an error, that the error was plain, and that it was reasonably likely that the instruction had a significant effect on the jury's verdict. State v. Davis , 864 N.W.2d 171, 178 (Minn. 2015). If those criteria are met, this court will not reverse unless reversal is necessary "to ensure the fairness, integrity, or public reputation of judicial proceedings." State v. Watkins , 840 N.W.2d 21, 28 (Minn. 2013).
CRIMJIG 20.64, based on Minn. Stat. § 152.0262 (2016), sets out the elements of the crime of possession of "any chemical reagents or precursors with the intent to manufacture methamphetamine." It provides, "First, the defendant possessed a chemical reagent or precursor to the manufacture of methamphetamine. 'Chemical reagent or precursor' includes _____ or any similar substances that can be used to manufacture methamphetamine." A footnote after the blank directs the reader to Minn. Stat. § 152.0262, subd. 1(b), (providing that " 'chemical reagents or precursors' includes any of the following substances, or any similar substances that can be used to manufacture methamphetamine, or the salts, isomers, and salts of isomers of a listed or similar substance" and listing ephedrine, pseudoephedrine, phenyl-2-propanone, phenylacetone, anhydrous ammonia, organic solvents, hydrochloric acid, lithium metal, sodium metal, ether, sulfuric acid, red phosphorus, iodine, sodium hydroxide, benzaldehyde, benzyl methyl ketone, benzyl cyanide, nitroethane, methylamine, phenylacetic acid, hydriodic acid, and hydriotic acid).
Here, the jury was instructed that "[t]he elements of possession of substances with intent to manufacture methamphetamine are: [f]irst, the defendant possessed chemicals or reagents with the intent to manufacture methamphetamine," but was not instructed that two substances found in the backpack, lithium metal and sodium hydroxide, were among those identified as "chemical reagents or precursors" in *683 Minn. Stat. § 152.0262, subd. 1(b). Appellant argues that this omission entitles him to a reversal of his conviction and a new trial on possession of substances with intent to manufacture methamphetamine.
While we agree with appellant that it was plain error for the district court to depart from CRIMJIG 20.64 by not instructing the jury that two of the items found in the backpack were on the statutory list of chemical reagents or precursors, we do not agree that his conviction should be reversed. A new trial on the basis of an erroneous jury instruction is warranted only if it is reasonably likely that the given instruction had a significant effect on the jury's verdict. Davis , 864 N.W.2d at 178. Here, it is not reasonably likely that the omission of the instruction had a significant effect, or indeed any effect, on the jury's verdict. The jury convicted appellant of possession of chemical reagents or precursors with the intent to manufacture methamphetamine having heard testimony that the backpack contained a recipe, ingredients, and equipment for making methamphetamine. The fact that the jury was not told specifically that two of the items in the backpack were on the statutory list of prohibited items made appellant's conviction less likely, not more likely.
We affirm appellant's conviction for possession of chemical reagents or precursors with intent to manufacture methamphetamine.
II. Admission of the Copy of the Facebook Page
"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." State v. Amos , 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).
During appellant's counsel's opening statement, the jury was informed that appellant did not live at his mother's residence in Sandstone, where the incriminating evidence was found, but rather had his own apartment, about 50 miles away in Cambridge, and that when appellant was booked into jail, he provided an address in Cambridge, where he said he had an apartment. An investigator then testified that appellant's Facebook page described appellant as "Mr. Sandstone" and indicated that he lived in Sandstone. The investigator offered a copy of the Facebook page and was questioned about it.
Q. How do you recognize [this exhibit]?
A. This is a picture of [appellant's] Facebook page.
....
Q. When did you observe it?
A. I observed this a long time ago actually but most recently today.
Q. And when you looked at it today, is this a fair and accurate representation of what you saw?
A. Yes.
Appellant objected that the copy was not authentic, lacked foundation, and was not relevant. The district court overruled these objections and admitted the copy.
"The evidentiary requirement for authentication as a condition precedent to admissibility is met only if the evidence is 'sufficient to support a finding that the matter in question is what its proponent claims.' Minn. R. Evid. 901(a)." In re Welfare of S.A.M. , 570 N.W.2d 162, 164 (Minn. App. 1997).
[One] example of authentication is testimony of a witness with knowledge that a matter is what it is claimed to be. Minn. R. Evid. 901(b)(1). This conventional method for authenticating [copies] is referred *684 to as the "pictorial witness theory " because the [copy] is thought to be a pictorial representation of what the witness observed.
Id . (quotation omitted). Here, the investigator testified that the copy was a representation of appellant's Facebook page, which the investigator had observed.
Appellant objects that the investigator did not testify that he "actually observed the activities and events shown on the Facebook page, as required for the admission of a [copy] under the 'pictorial witness theory.' " But appellant misunderstands that requirement: the witness was testifying only that the copy represented appellant's Facebook page: he was not testifying that appellant was "Mr. Sandstone" or lived at a particular address, but rather that his Facebook page listed him as Mr. Sandstone and gave that address for him.
Appellant also argues that the copy was unfairly prejudicial because it
was titled "Rambo Maneuvers" and depicted a man in dark clothing wearing a hood or cap that also appeared to cover his neck. The name "Rambo" apparently referred to a movie character ... known for being aggressively violent, including towards authority.... [A]fter jurors viewed the photograph [of the man on the copy of the Facebook page] they likely felt little doubt that appellant was guilty of doing exactly what he was accused of-possessing a short-barreled shotgun and drugs, and being involved in the manufacture of methamphetamine.
To show prejudice that would entitle him to a new trial, appellant must prove that the copy "significantly affected the verdict." See State v. Post , 512 N.W.2d 99, 102 n.2 (Minn. 1994) (holding that, if a district court erred in admitting evidence, a reviewing court must determine whether there is a reasonable possibility that the wrongfully admitted evidence "significantly affected the verdict"). The jury had heard testimony that appellant was seen with a firearm in his waistband and that a methamphetamine pipe was found in his pocket. The copy was admitted only as evidence that appellant resided at his mother's Sandstone address, not as evidence of any of the criminal offenses with which he was charged. Even if the district court had abused its discretion in admitting the copy of appellant's Facebook page, the admission did not significantly affect the verdict.[1]
III. Sentencing
When the facts are not in dispute, the decision whether multiple offenses are part of a single behavioral incident presents a question of law that is reviewed de novo. State v. Ferguson , 808 N.W.2d 586, 590 (Minn. 2012).[2]
Appellant argues that, because all five offenses were part of a single incident, his sentence to 129 months in prison for second-degree controlled-substance crime- *685 possession of a mixture of a total weight of 25 grams or more containing methamphetamine precludes his sentences for possession of chemicals or reagents with intent to manufacture methamphetamine (48 months in prison), for fifth-degree controlled-substance crime-possession of a mixture containing a controlled substance (17 months in prison, stayed, and discharge from probation), for possession of a firearm by a person convicted of a crime of violence (60 months in prison), and for possession of a short-barreled shotgun (60 months in prison).
Respondent agrees, as do we, that the sentence for possession of chemical reagents or precursors with intent to manufacture methamphetamine was precluded by appellant's sentence for second-degree controlled-substance crime-possession of a mixture of a total weight of 25 grams or more containing methamphetamine, because both offenses were part of the same incident. We also agree with appellant that the sentence for fifth-degree controlled-substance crime is precluded. Both that offense and the second-degree controlled-substance offense resulted from appellant's possession of methamphetamine: presumed current possession in the case of the second-degree offense and past possession in the case of the fifth-degree offense. Appellant was charged with, convicted of, and sentenced for only the possession of methamphetamine, not for its sale or manufacture. His personal possession and use of methamphetamine was a single criminal objective. "[W]hether the segment of conduct involved was motivated by an effort to obtain a single criminal objective" is a consideration in determining whether segments of conduct were part of the same behavioral incident. State v. Bauer , 792 N.W.2d 825, 828 (Minn. 2011). We reverse appellant's sentences for possession of chemicals or reagents with intent to manufacture methamphetamine and for fifth-degree controlled-substance crime and remand for the district court to vacate those sentences.
But we agree with the district court that (1) the second-degree controlled-substance crime sentence does not preclude either or both of the firearm sentences and (2) neither of those sentences precludes the other. "[W]hether all of the acts performed were necessary to or incidental to the commission of a single crime" is another consideration in determining whether offenses are part of the same behavioral incident. State v. Bakken , 883 N.W.2d 264, 271 (Minn. 2016).
Possession of a firearm-any firearm-is not necessary to commit the crime of possessing methamphetamine and therefore is not part of the same behavioral incident. Appellant could easily have possessed a firearm, even an illegal firearm, without possessing methamphetamine, and just as easily possessed methamphetamine without possessing a firearm. The sentence for possession of methamphetamine does not preclude the firearm sentences.
A conviction and sentence for being a prohibited person in possession of a firearm does not preclude a sentence for any other offense. Minn. Stat. § 609.035, subd. 3 (2016) ("[A conviction for being a prohibited person in possession of a firearm] is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct."); see also State v. Salyers , 842 N.W.2d 28, 37 (Minn. App. 2014) (holding that a district court did not err by sentencing a defendant both for possessing a firearm and for possessing a weapon with an obliterated serial number), aff'd (Minn.
*686 Jan. 14, 2015).[3] Appellant's sentence for being a prohibited person in possession of a firearm does not preclude his sentence for being in possession of a short-barreled shotgun.
The district court did not err in sentencing appellant for each of the two firearm-related offenses and the second-degree controlled substance offense.
IV. Appellant's Pro Se Issues
Appellant argues, pro se, that he is "a sovereign citizen" and that the district court therefore lacked jurisdiction over him. But the sovereign-citizen jurisdictional defense has "no conceivable validity in American law." United States v. Schneider , 910 F.2d 1569, 1570 (7th Cir. 1990). Appellant offers no caselaw refuting this premise or supporting his implication that the defense overrides the jurisdiction of the Minnesota district court over acts occurring in Minnesota.[4]
He also argues that the officers violated his Fourth-Amendment right by entering his mother's house after he had retreated into the house and slammed the door. But the officers were aware that appellant had a firearm and was fleeing them, and their concern about protecting human life justified their entry. See State v. Gray , 456 N.W.2d 251, 256 (Minn. 1990). In addition, appellant was a suspect, and the officers who knocked at the door were in "hot pursuit" of appellant when he retreated into the house and slammed the door. "[T]he doctrine of hot pursuit applies whether police officers engage in a high-speed chase of the suspect ... or merely approach a suspect who immediately retreats into a house...." State v. Paul , 548 N.W.2d 260, 265 (Minn. 1996). "[T]he police clearly were in hot pursuit of the defendant when they followed him to his apartment, and were thus justified in entering the apartment without a warrant to arrest him." Id. (citing State v. Koziol , 338 N.W.2d 47, 48 (Minn. 1983) ). Thus, neither appellant's "sovereign citizen" argument nor his Fourth-Amendment argument has merit.
DECISION
We affirm appellant's conviction for possession of chemical reagents and precursors with intent to manufacture methamphetamine because there is no reasonable likelihood that the omission of CRIMJIG 20.64, while erroneous, had a significant effect on the jury's verdict; we affirm appellant's other convictions because the admission of the photograph of appellant's Facebook page into evidence was not an abuse of discretion and did not prejudice appellant. We reverse appellant's sentences for possession of chemicals or reagents with intent to manufacture methamphetamine and for fifth-degree controlled-substance crime on the ground that they *687 are precluded by his sentence for second-degree controlled-substance crime and remand for the district court to vacate those sentences; we affirm his sentences for second-degree controlled-substance crime, for being a prohibited person in possession of a firearm, and for possession of a short-barreled shotgun on the ground that none of those sentences precludes either or both of the others.
Affirmed in part, reversed in part, and remanded.

Appellant also argues that "there was no testimony or evidence establishing that the images on the 'Facebook' page are those of appellant ... [or] that appellant placed the images on the page ...[or] created the 'Facebook' page." There is no indication in the record that appellant previously raised this argument. Therefore, it is not properly before the court, and we do not address it. See Roby v. State , 547 N.W.2d 354, 357 (Minn. 1996) (noting that an appellate court generally does not consider matters raised for the first time on appeal).

Appellant's failure to object to his multiple sentences in the district court is not a bar to raising the issue on appeal. See State v. Osborne , 715 N.W.2d 436, 441 n.3 (Minn. 2006) ("[T]he statutory protection against multiple sentencing ... is not forfeited by failing to raise the issue in the district court.").

Appellant argues that Salyers precludes sentencing him for any third crime. He relies on the Salyers holding that the district court erred in sentencing the defendant for possessing a short-barreled shotgun in addition to sentencing him for both possession by an ineligible person and possession of a shotgun with an obliterated serial number because the defendant's gun "just happens to have reflected both illegal characteristics at once." Salyers , 842 N.W.2d at 37. The two illegalities in the same gun were part of a single incident. But Salyers does not prohibit the sentencing of more than one other crime in connection with a sentence for ineligible possession if the other crimes are not part of a single incident.

Because his public defender would not raise the "sovereign citizen" argument, appellant asked about discharging him, but ultimately decided to continue his representation. The record demonstrates that appellant's challenge to the effectiveness of his public defender's representation is without merit.