*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0011**

State of Minnesota,
Respondent,

vs.

Shane Ryan Oneil,
Appellant.

**Filed February 14, 2024**
**Affirmed in part, reversed in part, and remanded**
**Reyes, Judge**

Itasca County District Court
File No. 31-CR-19-1071

Keith Ellison, Attorney General, Lisa Lodin, Assistant Attorney General, St. Paul, Minnesota; and

Matti R. Adam, Itasca County Attorney, Grand Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Reyes, Judge; and Reilly, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REYES**, Judge

Appellant contends that (1) the state failed to present sufficient evidence to convict him of felon-in-possession of ammunition; (2) he did not intelligently, knowingly, and voluntarily waive his right to counsel; and (3) his three gross-misdemeanor sentences must be reduced to 364 days in jail. Appellant raises several additional issues in his pro se supplemental brief. We affirm in part, reverse in part, and remand.

## FACTS

In April 2019, officers conducted a traffic stop on a vehicle driven by appellant Shane Ryan Oneil and discovered firearm ammunition, methamphetamine, and drug paraphernalia. Appellant is ineligible to possess firearm ammunition because of his prior conviction of fifth-degree possession of a controlled substance. Officers arrested appellant and his girlfriend, who was sitting in the passenger seat. The officer who drove appellant to the jail testified that appellant fell asleep multiple times during transport. At the jail, appellant declined officers' requests to perform field sobriety tests or to provide a blood or urine sample. Officers subsequently obtained a warrant for appellant's blood or urine sample and read appellant the implied-consent advisory, which informed him that he could be charged with a separate crime if he refused to comply with the warrant. Appellant nevertheless refused to provide a blood or urine sample.

Respondent State of Minnesota charged appellant with seven offenses, including: (1) felon-in-possession of ammunition under Minn. Stat. § 624.713, subd.1(2) (2018) (count I); (2) fifth-degree possession of a controlled substance under Minn. Stat. § 152.025,

subd. 2(1) (2018) (count II); (3) driving after cancellation, inimical to public safety under Minn. Stat. § 171.24, subd. 5 (2018) (count III); (4) refusing to submit to a chemical test under Minn. Stat. § 169A.20, subd. 2(2) (2018) (count IV); intent to escape tax under Minn. Stat. § 168.35 (2018) (count V); and (5) fourth-degree driving while impaired (DWI) under Minn. Stat. §§ 169A.20, subd. 1(2), .27, subd. 2 (2018) (count VI).[1]

Appellant's trial did not begin until May 2022, over three years after his arrest. During that time, the district court conducted numerous hearings in appellant's case, many concerning appellant's legal representation. The public defender's office initially represented appellant from April 2019 through July 2020. However, in August 2020, the district court discharged the public defender's office and granted appellant's request to represent himself.

The state subsequently asked the district court to obtain appellant's written waiver of his right to counsel either in writing or on the record. After granting a continuance for appellant to consider his options regarding counsel, the district court ordered appellant to complete a written waiver of his right to counsel if he was choosing to represent himself.

Over his next several court appearances, appellant espoused "sovereign-citizen"[2] arguments, which delayed the proceedings. In subsequent pretrial hearings, the district

---

[1] The state also charged appellant with having a loud muffler under Minn. Stat. § 169.69 (2018) (count VII).

[2] These arguments, which have been repeatedly rejected by the courts, included that United States courts lacked jurisdiction over him and that he was not the person identified in the complaint. *See, e.g.*, *State v. Winbush*, 912 N.W.2d 678, 686 (Minn. App. 2018), *rev. denied* (Minn. May 29, 2018).

court advised appellant of his right to counsel on the record, informed him of the maximum penalties for the charged offenses, and entered a not-guilty plea on his behalf.[3]

After appellant refused to formally waive counsel at a hearing in September 2021, the district court again ordered appellant to sign a written waiver of his right to counsel if he wished to represent himself. However, despite the district court's multiple reminders, appellant never signed the written waiver, and his case proceeded to trial in May 2022.

On the first day of his trial, appellant appeared without counsel, repeatedly stated that he was "not consenting" to the proceedings, and refused to sit at counsel table, instead observing his trial from the gallery. The trial continued without appellant's participation, and the jury convicted him of all seven counts. The district court sentenced appellant to 60 months in prison on count I, 17 months in prison on count II, and 365 days in jail on counts III, IV, and V, all to be served concurrently. The state requested that the district court record the guilty verdict but not impose a sentence on count VI because it derived from the same behavioral incident as count IV. However, the district court's sentencing order reflects that it imposed sentences on both count IV and count VI. This appeal follows.

**DECISION**

Appellant argues that (1) the state presented insufficient evidence to sustain his convictions of felon-in-possession of ammunition; (2) he did not voluntarily, knowingly, and intelligently waive his right to counsel; and (3) his gross-misdemeanor sentences on counts III, IV, and V must be reduced to 364 days in jail. Appellant further asserts several

---

[3] Based on his sovereign-citizen ideology, appellant refused to enter a plea.

4

other violations of law in his pro se supplemental brief.  Additionally, the state requests that we vacate appellant's conviction of count VI because it stems from the same behavioral incident as count IV.  We address each issue in turn.

I.     **The state presented sufficient evidence to sustain appellant's conviction of ineligible person in possession of ammunition.**

Appellant asserts that the state failed to prove beyond a reasonable doubt that he "possessed" the ammunition that the police found in his vehicle.  We disagree.

When considering insufficient-evidence claims, appellate courts examine the record to determine whether the evidence, when considered in the light most favorable to the conviction, could reasonably support the jury's verdict.  *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).  Evidence is sufficient to support a guilty verdict if the jury could reasonably conclude that the defendant committed the charged offense.  *Davis v. State*, 595 N.W.2d 520, 525 (Minn. 1999).

The state relied on circumstantial evidence to prove that appellant possessed the ammunition discovered in his vehicle.  Appellate courts review convictions dependent on circumstantial evidence in two steps.  *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010).  First, the reviewing court must identify the circumstances proved, deferring to the jury's acceptance of the state's proof of those circumstances and rejection of any contrary evidence.  *Id.*  Second, the reviewing court independently examines the reasonableness of all inferences that might be drawn from the circumstances proved.  *Id.*  To sustain the conviction, "the circumstances proved must be consistent with the hypothesis that the

5

accused is guilty and inconsistent with any [other] rational hypothesis." *Id.* (quotation omitted).

To convict appellant of felon-in-possession of ammunition, the state needed to prove that appellant knowingly possessed the ammunition beyond a reasonable doubt. *State v. Harris*, 895 N.W.2d 592, 598 (Minn. 2017). "Possession may be proved through evidence of actual or constructive possession." *Id.* at 601. Here, because appellant did not have direct physical control of the ammunition at the time of the traffic stop, the state had to prove that appellant constructively possessed the ammunition. *State v. Barker*, 888 N.W.2d 348, 353 (Minn. App. 2016). The state may prove constructive possession by showing either: (1) "that the police found the item in a place under the defendant's exclusive control" that others could not normally access or (2) if the item is found "in a place to which others had access, . . . that there is a strong probability [that] the defendant was consciously or knowingly exercising dominion and control" over the item at the time of the arrest. *Harris*, 895 N.W.2d at 601. Because the officers found the ammunition in locations where others potentially had access, the state had to prove appellant's constructive possession under the second option. *Id.*

Appellant contends that, although the state presented sufficient evidence to support its theory that he possessed the ammunition, the evidence did not eliminate the alternative rational hypothesis that he did not knowingly exercise dominion or control over the ammunition.

The circumstances proved by the state include the following: (1) appellant purchased the vehicle at least "a couple weeks" before his arrest; (2) appellant was driving

the vehicle with one passenger at the time of the traffic stop; (3) after officers initiated the traffic stop, appellant did not immediately pull over and made furtive movements, raising the officers' suspicions that appellant was hiding illegal items; (4) officers found three bullets in an open ashtray directly beneath the radio; (5) the open ashtray was immediately adjacent to the driver's seat; (6) officers found four additional bullets–three in the glove compartment and one in the backseat compartment; and (7) there were freshly smoked cigarettes near the ammunition in the open ashtray.

We conclude that these circumstances proved support the reasonable inference that appellant constructively possessed the ammunition and are inconsistent with any other rational hypothesis. Appellant attempts to analogize his case to *State v. Sam*, 859 N.W.2d 825 (Minn. App. 2015), and *Harris*, 895 N.W.2d 592, to support the assertion that the circumstances proved are consistent with an alternative hypothesis of his innocence. However, in holding that the state had failed to prove constructive possession beyond a reasonable doubt, this court in both *Sam* and *Harris* emphasized that the defendant did not own the vehicle containing the contraband and that the illegal items were not found on or near the defendant at the time of their arrest, suggesting that they may not have been aware of the items' presence. *Sam*, 859 N.W.2d at 835 (concluding it was rational to believe defendant's passenger or the car owner placed drugs in glove compartment without defendant's knowledge); *Harris*, 895 N.W.2d at 602-03 (noting that illegal firearm was wedged in backseat of car not owned by defendant).

Conversely, here officers observed the ammunition in the open ashtray directly next to the driver's seat in a vehicle that appellant owned. Officers testified that appellant must

7

have been aware of the bullets because of their close proximity to the driver's seat and because there were freshly smoked cigarettes near the ammunition. We conclude that, unlike *Sam* and *Harris*, appellant's alternative hypothesis of innocence is not reasonable. Because the circumstances proved, and the reasonable inferences that can be drawn from those circumstances, are consistent only with appellant's guilt, the state presented sufficient evidence to support appellant's conviction of felon-in-possession of ammunition. *See Andersen*, 784 N.W.2d at 329.

## II. Appellant, knowingly, voluntarily, and intelligently waived his right to counsel.

Appellant asserts that his convictions must be reversed because he did not make a constitutionally valid waiver of his right to counsel. We are not persuaded.

When, as here, the underlying facts are undisputed, the issue of whether a criminal defendant validly waived their right to counsel is a constitutional question that appellate courts review de novo. *State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012). Although the right to counsel is a constitutional requirement, criminal defendants can relinquish that right in three ways: (1) express waiver; (2) waiver by conduct; or (3) forfeiture. *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009). Generally, a defendant charged with a felony cannot expressly waive their right to counsel unless they complete a written waiver form or provide their waiver on the record. Minn. R. Crim. P. 5.04, subd. 1(4). However, even without a formal waiver under rule 5.04, appellant's express waiver is still constitutionally valid if the circumstances support that he "knowingly, voluntarily, and intelligently waived his right to counsel." *State v. Gant*, 996 N.W.2d 1, 7 (Minn. App. 2023). For the circumstances to establish a valid waiver, the record must reflect that the defendant waived

8

their right to counsel "with eyes open," meaning that the defendant is aware of the potential consequences of proceeding without representation. *Rhoads*, 813 N.W.2d at 888.

The circumstances here demonstrate that appellant knew the consequences of self-representation when the district court determined that he had waived his right to counsel. When a defendant has consulted with an attorney prior to waiver, the district court can "reasonably presume that the benefits of legal assistance and the risks of proceeding without it [have] been described to defendant in detail by counsel." *State v. Jones*, 266 N.W.2d 706, 712 (Minn. 1978). The public defender's office represented appellant for over a year before appellant discharged it in August 2020. Because appellant is presumed to know the consequences of discharging his court-appointed counsel, he made his waiver "with eyes open." *See id.*; *State v. Brodie*, 532 N.W.2d 557, 557 (Minn. 1995) (distinguishing cases in which record is silent on defendant's waiver with cases in which defendants "fire" their counsel).

Furthermore, a defendant's repeated refusal to accept representation despite reminders from the district court regarding their right to counsel is evidence that the defendant made a knowing and voluntary choice to represent himself. *Gant*, 996 N.W.2d at 9; *State v. Krejci*, 458 N.W.2d 407, 412-13 (Minn. 1990) (concluding that district court's numerous reminders about defendant's right to counsel over 19 pretrial appearances combined with defendant's delay tactics provided "ample evidence" of knowing and voluntary waiver). Here, the district court repeatedly informed appellant of his right to counsel, listed the charges and their maximum penalties, ordered appellant to fill out a written waiver form, granted continuances for appellant to find counsel, and requested

9

appellant to engage in a waiver colloquy. Because of his sovereign-citizen ideology, appellant refused to heed any of the district court's admonitions or comply with the district court's waiver requests. However, like *Krejci*, appellant's numerous pretrial proceedings and sovereign-citizen delay tactics provide ample evidence that he knew the consequences of self-representation and voluntarily waived his right to counsel.[4]

Because the record supports that appellant "knowingly, voluntarily, and intelligently waived his right to counsel," we conclude that he made a constitutionally valid waiver. *Gant*, 996 N.W.2d at 7.

### III. The issues raised by appellant's pro se supplemental brief do not entitle him to relief.

In his pro se supplemental brief, appellant contends that (1) the state failed to present sufficient evidence to sustain his conviction of fifth-degree possession of a controlled substance and (2) that he was not convicted of a "crime of violence" as required to be convicted of felon-in-possession of ammunition. Appellant also raises several arguments consistent with the sovereign-citizen ideology. Appellant's assertions are unpersuasive.

Appellant's pro se brief conclusively states that the state failed to prove beyond a reasonable doubt that he possessed the methamphetamine discovered in his vehicle. However, because appellant fails to support his assertion with citations to legal authority, this argument is waived. *State v. Ture*, 632 N.W.2d 621, 632 (Minn. 2001).

---

[4] The record is replete with evidence showing that appellant engaged in "extremely dilatory conduct," which supports the conclusion that, in addition to providing a valid express waiver, appellant forfeited his right to counsel. *Jones*, 772 N.W.2d at 505.

10

The record also contradicts appellant's contention that he was not previously convicted of a crime of violence. Qualifying "crimes of violence" are enumerated in Minn. Stat. § 624.712, subd. 5 (2018), and include controlled-substance offenses under chapter 152. At trial, the state proved that it had previously convicted appellant of fifth-degree possession of a controlled substance in violation of Minn. Stat. § 152.025 (2008). Appellant's argument fails. Similarly, appellant's sovereign-citizen arguments have "no conceivable validity in American law" and therefore do not entitle him to relief. *Winbush*, 912 N.W.2d at 686 (quotation omitted).

**IV.    Appellant's gross-misdemeanor sentences must be reduced to 364 days.**

The parties agree that appellant's 365-day gross-misdemeanor sentences on counts III, IV, and V are no longer authorized by law and must be reduced to 364 days consistent with a 2023 session law changing the maximum punishment for gross misdemeanors. 2023 Minn. Laws ch. 52, art. 6, § 6, at 736-37. Because the 2023 session law applies retroactively, we agree that the sentences must be corrected to 364 days. *Id.* ("This section is effective the day following final enactment and applies . . . retroactively to offenders who received a gross misdemeanor sentence before that date."). We therefore reverse appellant's 365-day sentences and remand to the district court to correct the sentences on counts III, IV, and V to 364 days.

**V.    Appellant's DWI conviction must be vacated.**

The state contends that the district court erred by entering judgments of conviction and imposing sentences for both count IV and count VI. Because refusing a chemical test and DWI are offenses arising from different sections of the same criminal statute, and

11

because appellant's convictions on count IV and count VI stem from a single behavioral incident, we agree that appellant's conviction of count VI must be vacated. *See State v. Bonkowske*, 957 N.W.2d 437, 443-44 (Minn. App. 2021) (holding that district court erred by sentencing defendant for both DWI and test refusal). The proper procedure when a criminal defendant is convicted of multiple charges for the same act is to adjudicate and impose sentence on one count only. *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984). We therefore remand to the district court to vacate appellant's conviction and sentence of count VI, leaving the finding of guilt in place.[5]

**Affirmed in part, reversed in part, and remanded.**

---

[5] Appellant also contends that the state failed to present sufficient evidence to sustain his DWI conviction. However, because we conclude that his DWI conviction should be vacated, we need not decide that issue. *State v. Ashland*, 287 N.W.2d 649, 650 (Minn. 1979) (noting that appellate courts need not determine sufficiency of the evidence for convictions that are not formally adjudicated).